NAPTON v. LEATON *et al.*, *Appellants.*

1. **Will**: EVIDENCE. To deprive one of land devised to him, on the ground that the testator, after making the will, conveyed the land to another person by a deed which was lost without ever being recorded, the evidence in support of the deed ought to be clear. The sworn statement of the person claiming as grantee, unsupported by other evidence, is not sufficient.

2. **Foreign Judgment may be Impeached for want of Notice.** The record of a judgment rendered in another State may be impeached in a collateral proceeding by evidence showing that the defendant had no notice of the action and never authorized any one to appear for him, even though the record affirmatively states the contrary.

3. **Former Judgment**: NO ESTOPPEL. In a proceeding brought in Tennessee for the settlement of an estate in which the present plaintiff had an interest, to which proceeding she was not made a party, it was adjudged that certain land now claimed by her belonged to another, who, however, was required to account for its value, whereby the distributive share of the present plaintiff was increased and she received a portion of her share in money on that basis. *Held,* that these facts did not preclude the plaintiff from asserting her claim in this action.

4. **No Laches.** Until two years before this suit was brought plaintiff

had no knowledge of any title in herself to the land sued for. For many years previous her aunt had represented herself to be owner, and had exercised acts of ownership without objection from plaintiff, who during the whole time had labored under the disability either of infancy or coverture ; *Held,* that her acquiescence did not amount to laches, so as to bar the assertion of her claim.

5. **Plaintiff in Ejectment, not Required to Refund Taxes.** The plaintiff in ejectment cannot be compelled, before recovering, to refund to the defendant taxes paid by him under a claim of ownership but without title or color or title.

*Appeal from Saline Circuit Court.*—HON. WM. T. WOOD, Judge.

AFFIRMED.

*Chas. A. Winslow* for appellants.

*Samuel Boyd* for respondent.

NORTON, J.—This is a proceeding in ejectment to recover the possession of the following lands in Saline county, to-wit : The northwest quarter of the southeast quarter of section 17, township 49, range 20, and the southwest quarter of the southeast quarter of section 17, township 49, range 20. The suit was instituted against defendant, Leaton, and Eva W. Miller, being the landlord of said Leaton, and the real party in interest, was subsequently, on her motion, made a party defendant. The petition is in the usual form, and the answer of defendant Leaton is a specific denial of the allegations therein.

The separate answer of defendant Eva W. Miller, after denying specifically the allegations of the petition, avers that the tract of land in controversy was formerly owned by Thomas L. Williams, late of Knox county, Tennessee ; that said Williams died in 1856, having previously made a will, dated November 20th, 1854, which was admitted to probate in Knox county, Tennessee, January, 1857; that the thirteenth clause thereof contains this devise : " The land I own in the State of Missouri, which adjoins

the land conveyed to my daughter, R. L. Shelby, I give and devise to Mary P. Shelby, my granddaughter, she accounting for the fair cash value of said land at the time of my death;" that, after the execution of said will, the testator made a deed to said Mary P. Shelby, now intermarried with William B. Napton, Jr., conveying to her certain lands adjoining lands heretofore conveyed to her mother, which was dated in October, 1856, and in which the tract in suit is not mentioned; that said testator, some time prior to his death, made a conveyance of the land in suit to Margaret M. Miller, his daughter, together with other lands, which deed was lost before being recorded; that, after the will was probated, John Williams, the administrator *de bonis non*, filed a bill in chancery, before the chancellor of the eastern division of Tennessee, sitting at Knoxville, and having jurisdiction, the purpose of said bill being to obtain a construction of said will, and settle the advancements between the legatees, and adjust the kind and character of the advancements; that all the devisees, including Mary P. Napton, then Shelby, were made parties to said bill; that said Mary P. Napton, then Shelby, was a minor, and was represented by David H. Deadrick, as guardian *ad litem*, and in part by William B. Napton, her regular guardian in Missouri; that it was alleged in said bill that the testator, a short time before his death, while on a visit to his daughter, made a deed to Margaret M. Miller, conveying to her the land mentioned in the foregoing devise, and it was asked that she be charged with said land at its value at the time of its conveyance; that Mary P. Shelby, by her answer, insisted that the tracts of land which were devised to her by said will having been conveyed to Margaret M. Miller, in the life-time of the testator, therefore, that the respondent, Mary P. Shelby, was entitled to an amount in money equal to the value of said lands at the time of the testator's death; that, on the hearing before the chancellor and master, Margaret M. Miller was charged with the tract of land in suit at $8 per acre,

and the plaintiff was charged with no land, but was allowed her portion in money; that plaintiff, since her majority, and her husband, since the marriage, with full notice and knowledge, received and receipted for her portion on the basis of having the land charged to Margaret M. Miller; that Margaret M. paid the taxes on said land until she conveyed the same to Lewis W. Miller, her son, and the husband of this defendant; that Lewis W. Miller gave a deed of trust on the land to one Sandidge, for the benefit of one Patterson; that Sandidge sold the land, and defendant became the purchaser, and is now the legal owner; that, since the year 1859, M. M. Miller, Lewis W. Miller and this defendant have paid the taxes on the land, aggregating $110.84; and that they have made valuable and lasting improvements, aggregating $800, with the knowledge and acquiescence of plaintiffs. These facts are insisted on as an estoppel, in addition to the alleged conveyance of the legal title.

The reply to this answer admits that the land belonged to Thomas L. Williams, who died in 1856, leaving a will, which was probated, the 13th clause being as copied, as alleged in the answer. It is alleged that the land in suit is part of the land described in the bequest aforesaid, and that plaintiff Mary P. Napton, then Shelby, is the grand-daughter referred to. It is denied that testator conveyed this land to Margaret M. Miller at any time, or made any deed therefor. It is alleged that Margaret M. Miller falsely represented to the devisees, and to the administrator *de bonis non*, (whether by mistake or not they do not know,) that a deed had been made and delivered to her for said land; that plaintiffs have since been informed that the said administrator, acting upon the supposition that said representation was true, filed the bill in chancery as stated, and alleged therein that said land had been so conveyed, and asked that Margaret M. Miller be charged with the value thereof; that plaintiffs do not know whether she was so charged, but say that no evidence was produced in said

suit to prove such conveyance; that plaintiffs may have been made parties, but they deny any legal or actual notice, or that any one had any authority to appear for them; and that said Mary P. Napton was a minor thirteen years of age at the time, and was and ever since has been a resident of the State of Missouri. It is denied that she was represented by William B. Napton, Sr., or that Deadrick filed any such answer as alleged, and if he did, it was without authority. It is alleged that no final decree has been made in said chancery suit, and that all the issues involved here are yet pending therein. It is denied that plaintiffs had any knowledge of the orders and decrees of said court, or have acquiesced in the same, or received and receipted for the portion of Mary P. Napton as stated, but that a larger amount is still due her than the value of said lands. It is alleged that said chancery proceeding, so far as it affects this land, is false and fraudulent; that said estate is unsettled, leaving a large amount yet due Mary P. Napton, out of which she is willing to account for the value of said land under the will; and that Lewis W. Miller may have mortgaged the land to Sandidge, but if plaintiff purchased as stated, it was with notice of the fact that the land belonged to Mary P. Napton. The payment of taxes is denied; the making of some improvements is admitted; but the alleged value, and that Mary P. Napton had any knowledge thereof are denied.

Plaintiffs obtained judgment in the circuit court, from which defendants prosecute an appeal to this court.

Both plaintiffs and defendant Eva W. Miller claim the land in controversy, through Thomas L. Williams as the common source of title. Plaintiffs derive their title by virtue of a will executed by said Williams on the 20th day of November, 1854, and admitted to probate in Knox county, Tennessee, in January, 1857, which contains the following clause, viz.: " The land I own in the State of Missouri, which adjoins the land conveyed to my daughter, R. S. Shelby, I give and devise to Mary P. Shelby, my grand-

daughter, she accounting for the fair cash value of said land at the time of my death." The evidence abundantly shows that the said devise to Mary P. Shelby, now the plaintiff Napton, embraces the land in controversy. De-. fendant insists that, notwithstanding the provision of said will, the title never passed to Plaintiff Mary P. Napton, formerly Shelby; first, because the testator, subsequently to the date of the will, and previous to his death in 1856, executed and delivered to his daughter, Margaret M. Miller, a certain deed conveying to her the identical lands therein devised to Mary P. Shelby, and that the title to the lands so conveyed, by various *mesne* conveyances, has become vested in defendant Eva W. Miller; second, because the plaintiffs are estopped from disputing the validity of defendant's title to the land in controversy by reason of the proceeding instituted by the administrator *de bonis non* of the estate of said Williams, in the chancery court sitting at Knoxville, in the State of Tennessee.

The questions, therefore, presented for our consideration are two : First, Did Thomas L. Williams, after the date of his will and before his death, execute and deliver to Mrs. Margaret M. Miller a deed conveying the land in dispute ? Second, If he did not, are plaintiffs estopped by the said chancery proceeding from asserting title under the will ? The trial court determined both these questions in the negative, and we are asked to review its finding in these particulars. This being an action of ejectment, we might dispose of the questions presented by saying that as there was evidence on the trial tending to establish the respective theories of plaintiffs and defendant, we would not consider it for the purpose of determining whether it preponderated in favor of or against either plaintiffs or defendant, that being properly the province of the jury, or the court sitting as a jury, and which we have repeatedly held this court would not invade. But as the parties by stipulation have agreed that a suit in chancery, instituted in the Saline county circuit court by defendant Eva W. Miller

against the plaintiffs and others, involving the same questions, shall be submitted and determined with the ejectment proceeding, we are justified in looking at the evidence with a view of ascertaining whether these questions were decided by the trial court according to the weight of the evidence.

It may be observed that to deprive a devisee of land under a will on the ground that the testator had subsequently to the date of his will conveyed the same land to another person by deed which is alleged to be lost, the evidence adduced in support of such deed should clearly and certainly establish the fact that it was executed and delivered and conveyed the land devised. In all such cases it would seem to require more evidence than the sworn statement of the grantee claiming under such deed, that it was executed, delivered and conveyed the land. If the evidence of the grantee unsupported by other evidence should be esteemed sufficient to establish such fact, the title to land vested by virtue of a devise in a will would be held by a most uncertain tenure. It is, we think, clear that the evidence offered by defendant to establish the fact of the execution and delivery of the deed does not meet the requirement of the rule above indicated.

Mrs. Miller, the grantee, swears that Thomas L. Williams, her father, who resided in the state of Tennessee, during his visit to Missouri in 1856, made the deed in question at her home in Boonville, Cooper county, Missouri, after the death of her husband, and delivered it to her with at least one other deed and perhaps others, urging and requiring her to place the same on record; that at the time of making the deed Mary P. Napton, then Shelby, a child twelve years of age, being at her house, was called upon by Mr. Williams, her grand-father, to sign the deed or something pertaining thereto ; that she never read them, did not know their contents—supposed her father read them to her or told her of their contents—knew he told her that they were for the lands in controversy ; that soon after the

delivery of the deeds she went to Mississippi on a visit to her sister, and after arriving there remembered that she had forgotten to have the deeds registered, and wrote to Mr. Stephens, the administrator of her husband's estate, directing him where to find them, and requesting him to have them recorded; that she had never seen the deed since, and did not know where it was.

The only other evidence bearing upon the question of the execution of a deed to Mrs. Miller, by her father, is to be found in the evidence of McCallister, and which is claimed to corroborate that of the Mrs. Miller. McCallister testifies that he took Williams' acknowledgment to a deed made in May, 1856, at Judge Napton's house in Saline county; that this occurred before the death of Mrs. Miller's husband, that he did not recollect of taking but one acknowledgment of Williams; that Williams told him the deed was to Mrs. Miller, (may have said to his daughter,) for the land across Blackwater, near the land of witness; that he might be mistaken as to the deed to Mrs. Miller, but his recollection was that Williams told him it was to her; that this occurred before the death of Mrs. Miller's husband.

The evidence of this witness, so far from corroborating that of Mrs. Miller, is in conflict with it. McCallister swears that the deed was executed in Saline county, before the death of Mrs. Miller's husband. Mrs. Miller swears that the deed was made after her husband's death, at her house in Cooper county. The statement of these two witnesses are irreconcilable except on the theory that both of them were mistaken in regard to the character of the deeds referred to by them in their respective statements, and that they were so mistaken, we think, is clearly shown by the evidence introduced by plaintiffs showing that on the 8th day of December, 1856, four deeds were filed for record in the recorder's office in Saline county and recorded by the recorder, viz: One from Thomas L. Williams to Mrs. M. M. Miller, acknowledged before Stephens, a notary

public in Cooper county, October 22nd, 1856, conveying land in Saline county, but not any of that in controversy. One from Thomas L. Williams to Mary P. Shelby, also acknowledged before said Stephens October 22nd, 1856. One from Smith's heirs to Thomas L. Williams. One from Thomas L. Williams to Mrs. Cynthia Berkley, acknowledged before McCallister in Saline county July 25th, 1856, and conveying to her (she being the daughter of said Williams,) land in Saline county. This evidence, while it establishes that Mrs. Miller was not mistaken as to her father having made her a deed at her house in Cooper county, also establishes the fact that she was mistaken as to the land conveyed by it; and while it establishes the fact that McCallister was not mistaken as to having taken the acknowledgment of Williams to a deed conveying lands across Blackwater in Saline county, it also very strongly tends to show, if it does not conclusively show, that he was mistaken in respect to the time when it was taken and the person who was the grantee in the deed. We are, therefore, of opinion that the evidence fails to establish the execution of the deed conveying the land in question to Mrs. Margaret Miller, and that the trial court did not err in so holding.

Nor do we think that the proceeding instituted by the administrator *de bonis non* of the estate of said Williams 2. FOREIGN JUDG- in the chancery court of Knox county, Ten-
MENT MAY BE IM- nessee, as alleged in the answer, so far as it
PEACHED FOR
WANT OF NOTICE. affects the title to the land in dispute, is binding or conclusive upon the plaintiff, or that she is estopped thereby from asserting title to the land devised to her by said will. The record and evidence clearly show that the plaintiff, Mrs. Napton, when said proceeding was instituted, was in her minority, being only about fifteen years of age; that she had no notice of said proceeding, never appeared to the same, nor authorized any one to appear for her; that the statement in the bill filed, that the testator, Wil-

liams, after making his will, had conveyed, by deed, the lands in question to Mrs. Miller, was made upon the representations of Mrs. Miller to the administrator that such was the fact; that, while the record in said suit shows that Mr. Deadrick filed an answer as guardian *ad litem* of Mary P. Shelby, it also shows that he did so without authority, not having been appointed by the court for that purpose ; that no proof was taken in regard to the truth of the allegation in the bill, that Williams, the testator, had in fact conveyed the land as therein alleged; that Miss Shelby had never been in Tennessee since she was five years old, and that, in 1862, while still a minor, she intermarried with William B. Napton, Jr., and has ever since remained under coverture ; that a judgment or decree rendered under the circumstances above detailed cannot have the effect of depriving her of title to the land sued for, or that she cannot be estopped thereby, we think is clear.    A judgment rendered without notice is void (*Anderson v. Brown*, 9 Mo. 640 ; *Roach v. Burnes*, 33 Mo. 319), and advantage may be taken of such judgment in a collateral proceeding.    *Abbott v. Sheppard*, 44 Mo. 273 ; *Higgins v. Peltzer*, 49 Mo. 152. Want of service of notice, or that appearance by attorney was unauthorized, may be shown to impeach a foreign, as well as a domestic, judgment; *Marx v. Fore*, 51 Mo. 69 ; and this can be done, even though the jurisdiction of the court over the person appeared affirmatively from the record.    *Eager v. Stover*, 59 Mo. 87.

It is also insisted that, as the chancery court in Tennessee, in making distribution of the estate of said Williams 3. FORMER JUDG-MENT: no estop-pel. charged Mrs. Miller with the value of the land in question, whereby Mrs. Napton's distributive share in said estate was increased, it would be inequitable to allow her to recover the lands and retain the proceeds of her distributive share thus enlarged.    This argument could be more appropriately addressed to the chancery court in Tennessee, which is invested with jurisdiction

to make distribution of decedent's estate according to the terms of the will and the laws of the State of Tennessee, especially so, as it appears that no final judgment has been rendered by it, but that said proceeding is still pending. It is for the chancery court in Tennessee, and not this court, to correct the mistake made in charging Mrs. Miller with the value of the land, the title to which, under the will, was vested in Mrs. Napton.

It is also insisted that plaintiffs are estopped by their conduct and laches from asserting title against Mrs. Margaret Miller, or her representatives. While it may be conceded that courts of equity neither encourage laches nor foster the prosecution of stale demands, and will, in a proper case, deny relief on such grounds to the party seeking it, the facts and circumstances developed by the evidence in this case do not call for the application or enforcement of the principle. It appears from the evidence that, at the time of the death of the testator, Williams, Mrs. Napton was a child twelve years of age, residing in Missouri, and she testifies that all "she knew about the land in suit was that her aunt, Mrs. Miller, claimed to own it, and heard her and others say that she had mortgaged it in 1866; that she first saw a copy of her grandfather's will about two years before this suit was brought; that she never saw the land, and knew nothing about improvements upon it." Mrs. Napton being the niece of Mrs. Miller, nothing is more natural than that she would place implicit confidence in the truth of her statement that she owned the land in controversy, and it is not at all strange that she acted upon the belief that the fact was as her aunt represented it to her.

To say that non-action on the part of Mrs. Napton in the assertion of her right to the land in suit, which was occasioned by the conduct and representations of Mrs. Miller, through whom defendant claims, should be imputed to her as laches and work an estoppel, would be a total

*4. NO LACHES.*

perversion of that equitable doctrine, especially so when it is considered that during the time she was laboring either under the disability of minority or coverture, and was neither apprised of her rights under the will nor of the fact that Mrs. Miller was mistaken in regard to the representation made by her, that she was the owner of the land, till about two years before this suit was instituted. It certainly does not lie in the mouth of those who claim under Mrs. Miller to claim that the conduct and laches of plaintiff, induced and brought about solely on account of her misrepresentations, should operate as an estoppel. Simple acquiescence by plaintiff in the truth of the representations made by Mrs. Miller, she being in ignorance of her title, cannot work an estoppel. *Smith v. Hutchinson*, 61 Mo. 83.

It is also insisted that plaintiffs ought not to be allowed to recover the land without accounting for taxes paid and improvements put thereon.

So far as the question of compensation for improvements is concerned, the statute regulating ejectment suits provides an ample method for its adjustment; and, before the recovery is made effectual by the execution of a writ of possession, defendant can institute the proceeding therein provided, alleging in her petition the statutory requirements necessary to entitle her to compensation for improvements. Besides this, compensation for improvements might well be denied in this suit, as it appears that they were made by Stredger & Leaton, lessees of defendant, in consideration of the use of the land.

As to defendant's right to recover taxes paid, it may be said that such payments were not made upon request of plaintiffs, but were entirely voluntary; that the assertion of title on the part of Mrs. Miller, upon the truth of which plaintiff relied, had the effect of depriving her of the use and enjoyment of the lands, and of allowing the use of the same to remain with defendant. No action can be maintained for money

5. PLAINTIFF IN EJECTMENT, NOT REQUIRED TO REFUND TAXES.

paid for another, except upon previous request, express or implied, or subsequent assent and sanction. *Allen v. Richmond College*, 41 Mo. 302 ; *Claflin v. McDonough*, 33 Mo. 412. Judgment affirmed, in which all concur, except NAPTON, J., who did not sit in the case.