THE BURLINGTON & MISSOURI RIVER RAILROAD COMPANY IN NEBRASKA V. T. W. THOMPSON.

1. STATE LAWS — *No Extra-territorial Force.* The laws of a state, and in this are included its exemption laws, have no extra-territorial force.

2. GARNISHMENT—*Insufficient Answer.* To garnishee proceedings in the courts of this state, it is no sufficient answer that the debt of the garnishee to the defendant is by the laws of the state where both defendant and garnishee reside, exempt from seizure under such process.

3. FOREIGN CORPORATION, *May be Garnished, etc.* A foreign corporation coming into this state, and leasing property and doing business here, may be garnished for a debt due to one of its employés, although such employé is not a resident of this state, and although the debt was contracted outside of the state.

4. GARNISHMENT—*Limit of Amount Bound by Process.* Where at the time of service of garnishee process the defendant is in the employ of the garnishee and continues thereafter in such employment, the garnishee proceedings bind only the amount due at the date of the service of process, and do not reach to amounts subsequently earned, even under a prior contract of employment.

*Error from Atchison District Court.*

ACTION of debt brought by *T. W. Thompson* against G. L. Jackson. *The Burlington & Missouri River Railroad Company in Nebraska* was duly garnished in the action. Trial by the court at the June Term, 1883, when the court made findings of fact as follows, to wit:

"1. On November 9, 1881, the plaintiff commenced an action before a justice of the peace of this county against G. L. Jackson, for the recovery of an indebtedness of $15\frac{50}{100}$ dollars, and at the same time plaintiff commenced in due form of law, proceedings in garnishment against the said railroad company, which is a railroad company organized and existing under the laws of Nebraska, and having its general or principal office at Omaha, Nebraska, and operating lines of railroad principally in that state; but it also operates under a lease the Atchison & Nebraska railroad, extending from Atchison, in Atchison county, Kansas, to Lincoln, Nebraska, a total distance of one hundred and forty-seven miles, of which about thirty-seven miles are in Kansas; and

has local agents to transact its business along said line, including one at Atchison, in this county, who is known as the station agent, having charge of the depot, and also of the local passenger and freight business, and the notice of garnishment was served on said agent on said day. No personal service of summons was ever made upon said G. L. Jackson, and he never appeared in the action, but service was made by publication; the case as to the garnishee being continued from time to time by agreement between the plaintiff and the garnishee.

"2. Said railroad company made partial answer as garnishee on November 18, 1881, and also on November 27, 1881, and full answer on February 25, 1882. In said full answer the garnishee admitted that on November 19, 1881, said company was indebted to said G. L. Jackson in the sum of twenty-six dollars and twenty-five cents, but that on November 21, 1881, he quit the service of the company and was discharged and paid off; that said money was due said G. L. Jackson for earnings for personal services rendered within the last two months next preceding said time, and necessary for the support of the family of said G. L. Jackson, and of which he was the head, and that said money was exempt from attachment or garnishment.

"3. On May 10, 1882, judgment was rendered by said justice of the peace in favor of the plaintiff against said G. L. Jackson for $15\frac{50}{100}$ debt, and $12\frac{90}{100}$ costs in said action. On May 22, 1882, an order was made by said justice of the peace, requiring said railroad company to pay into court on said judgment said sum of $26\frac{25}{100}$. Said railroad company has never paid said sum nor any part thereof, upon said judgment, which remains unsatisfied; neither said G. L. Jackson nor said railroad company ever having paid any part thereof.

"4. During the month of November, until the 19th day thereof, said G. L. Jackson was a brakeman in the employ of said railroad company on its said leased line between Atchison and Lincoln, assisting in operating trains between said points, and up to said time his wages were $26\frac{25}{100}$; but up to November 9, 1881, when said railroad company was served with notice of garnishment, the amount due him was only $15\frac{50}{100}$. Said G. L. Jackson was the head of a family consisting only of his wife and himself, and they lived and resided at Lincoln, Nebraska; and said money was due solely for personal services of said G. L. Jackson, as wages as a

brakeman for said railroad company during November, 1881. The general business of said company was transacted at Omaha; but employés working upon trains and at stations were usually paid from a pay car run over the lines of railroad, by checks upon the treasurer at Omaha; and the indebtedness to said G. L. Jackson was so paid by checks upon the treasurer at Omaha.

"5. Ever since February 25, 1873, an act of the legislature of Nebraska has been in force, as follows:

'SECTION 1. The wages of laborers, mechanics, and clerks, who are the heads of families, in the hands of those by whom such laborers, mechanics, or clerks may be employed, both before and after such wages shall be due, shall be exempt from the operation of attachment, execution, and garnishee process: *Provided*, That not more than sixty days' wages shall be exempt: *Provided further*, That nothing in this act shall be so construed as to protect the wages of persons who have or are about to abscond or leave the state, from the provisions of law now in force upon that subject: *Provided further*, That nothing in this act shall be so construed as to permit the attachment of sixty days' wages in the hands of the employers.'

"6. Whether said wages were necessary or not for the maintenance of the family of said G. L. Jackson, does not appear; and it does not appear whether the said G. L. Jackson ever had any actual notice of ·said action, or of said garnishment proceedings, or not."

On the foregoing findings the court made the following conclusion of law, to wit:

"The plaintiff is entitled to recover of the defendant the sum of $13\frac{50}{100}$ dollars, the amount of the defendant's indebtedness to G. L. Jackson at the time the garnishment proceedings were instituted and the notice served, and no more; and also the costs of suit."

To each and all of the conclusions of fact so found and stated, the defendant duly excepted; and to the conclusion of law refusing plaintiff judgment for the sum of $26\frac{25}{100}$, the plaintiff duly excepted. Thereupon the defendant asked the court to·specially find and state its conclusion of fact as to the place where the said G. L. Jackson was employed for such service, and the kind of· service so employed for, and the court declined to change its findings in any respect as so filed; to which action of the court, the defendant at the time duly excepted. A new trial was denied, the defendant excepting. Thereupon the court upon the findings aforesaid

adjudged that plaintiff recover of defendant the sum of $13$\frac{50}{100}$, together with costs of suit, and that plaintiff have execution therefor. The defendant railroad company excepted to this judgment, and brings the case here.

*W. W. Guthrie*, for plaintiff in error:

Three questions, but in reality involving but one proposition, are presented by the record: First, can a foreign corporation be garnished as the debtor of a non-resident, for a debt contracted and payable in a foreign state, by service on a servant, or even the officers of the corporation? Second, can a non-resident claim exemption of his wages in this state, when residing in another state and earning his wages there, which has a labor exemption like that of Kansas, except that if he is the head of a family his wages are exempt under all circumstances? Third, can the garnishee interpose as a defense in an action against it, after having paid its creditor, as the laborer might have done; or in other words, can the corporation decline to pay its laborer in such case, after garnishment?

1. This case on the record is fully within question one as stated, and must be decided in the negative under the authority of reason, and the principle of the following cases: *Tingley v. Baterman*, 10 Mass. 343; *Sanks v. Rld. Co.* 45 Wis. 172, 180; *Sawyer v. Thompson*, 4 Foster (N. H.) 510. It cannot be said that the laborer may demand his wages and the debtor be unable to refuse, and then in a foreign jurisdiction where the laborer has no interest to go, that a creditor of such laborer can successfully demand a second payment unless such laborer shall there claim his exemption. In this case, the right of the laborer to demand his wages in Nebraska must protect the employer from garnishment without that state; in other words, the right exists by virtue of the laws of Nebraska, and unless the owner thereof submits to another jurisdiction he cannot be affected; and if he cannot be affected, neither can his debtor. (*Pierce v. Rld. Co.*, 36 Wis. 283; *Rld.*

*Co. v. Ragland,* 84 Ill. 376; *Winterfield v. Rld. Co.,* 16 id. 435; *Lock v. Johnson,* 36 Me. 464.)

2. Our statute authorizing garnishee proceedings and service on depot agents (as was done in this case) does not give such right outside of Kansas jurisdiction; and so held in a case in point, *Sawyer v. Thompson,* supra, quoted in 45 Wis. 178.

3. The Nebraska statute exempted Jackson's wages if he was the head of a family, without regard to whether or not his wages were necessary to the support of his family. We insist that such exemption can be insisted on in Kansas in a proceeding *in rem* by the employer, as it may be by him, or in his favor, in Nebraska, as of right, and as held in *Sawyer v. Thompson;* but if not of right, then of comity. Shall it be said that the employer of a laborer at $45 per month, who is the head of a family, can be followed into Kansas, and his wages, exempt where both he and his employer live, and such wages are earned and payable, be there taken, not as of right, but of comity to a sister state? The reasons for protecting wages are much stronger than in favor of a homestead, and in such case this court has said, (*Monroe v. May,* 9 Kas. 475): "We may not defeat its beneficent purpose by strict, technical, arbitrary constructions." (See also *Morris v. Ward,* 5 Kas. 247.) Shall it be said that Jackson's wages were exempt to him so long as he and his employer remained in Nebraska; but let the employer cross the line into Kansas, and in an instant his exemption is gone, or the employer is compelled to pay him in Nebraska, and his creditor in Kansas, unless he appear and show that such wages were, under the laws of Kansas, "necessary for the maintenance of his family"?—that although in fact he maintained his family, he might have done so from other sources?

But it is urged that if Jackson wanted his exemption, let him claim it, and not another for him. He had a right to his wages, and demanded and received his money, and went his way; and who should say that he should not?

4. The trial court erred in its sixth conclusion of fact, in finding that "there was no evidence that Jackson's wages were, or were not, necessary for the support of his family." We insist that the evidence was conclusive as to such need; that were the burden on the defendant, to show affirmatively that his wages were necessary for the support of his family, that it showed as conclusively as could be shown that Jackson was a married man, and lived at a boarding house with his wife, and supported both on a salary of $45 per month as train brakeman.

5. The proceedings had before the justice only laid the foundation for this action, but determined no question between these parties.

This action is under § 43, p. 709, Comp. Laws 1879, and may be maintained for any one of three causes: (1) Want of answer; (2) answer unsatisfactory; (3) refusal to pay over on answer. (*Fitch v. Ins. Co.,* 23 Kas. 369; *Bank v. Gulick,* 24 id. 361.)

6. There can be no review of the action of the court by defendant in error, but if so, no claim for recovery can be had beyond the amount owing at date of garnishee service, $13.50. (*Phelps v. Rld. Co.,* 28 Kas. 165,168.)

We insist that the judgment below should be reversed, and the trial court ordered to enter judgment on the findings for plaintiff in error.

*Hudson & Tufts,* for defendant in error:

In reply to the petition in error herein, and the brief of counsel in support thereof, we submit the following copies of the written opinions of the trial judge upon the points in question:

T. W. THOMPSON v. THE BURLINGTON & MISSOURI RIVER RAILROAD COMPANY IN NEBRASKA.

The first question presented in this case is whether a railroad company incorporated under the laws of a sister state, but operating leased lines of railroad here in this county, can be held to answer as a garnishee for an indebtedness owing

by it for services performed for it in the state of its incorporation and in this state, and payable at its general office in the sister state?

This question was fully considered by this court in the case of *Joseph Donahue v. Elisha P. Reynolds & Co.*, [see, *post,*] and anwered in the affirmative, and we see no reason to change the opinion therein expressed.

The next question is whether such a corporation owing a debt to an employé residing in the sister state, can be held to pay over upon garnishment proceedings here against such employé the amount of such indebtedness, when it is made to appear by the railroad company that the money is exempt to its employé under the laws of Nebraska, but the showing is insufficient to sustain such exemption under the laws of Kansas?

In *Winterfield v. M. & St. P. Rly. Co.*, 29 Wis. 589, it was queried by the court whether, in order for the garnishee to protect himself against liability to the creditor, it is not necessary for the garnishee to set up the exemption of the money when that fact is known. In that state the affidavit for garnishment must show, among other things, that the money or property sought to be garnished is " not by law exempt from seizure or sale on attachment or execution." And the court says that "it would be very remarkable if the legislature intended, when it enacted that such affidavit should be the complaint in the action, that the garnishee should not be permitted to answer one of its most material averments of fact."

And in *Pierce v. C. & N. W. Rly. Co.*, 36 Wis. 283, the court went further, and expressly held- that it was the duty of the garnishee to exhaust all means to avoid a judgment against it, and for this purpose to bring to the notice of the court the fact of exemption, or to notify the principal defendant of the proceedings, and to request him to defend, and that failing to do so it was liable to the action of its creditor, notwithstanding it had paid the amount in a garnishment proceeding in another state, it being presumed, in the absence of proof, that the exemption laws in the state where the garnishment proceedings were had were the same as those of Wisconsin. Probably this is a proper construction of the statutes relating to garnishment in Wisconsin, although Mr. Freeman says the decision is "utterly indefensible." (Freeman on Executions, § 209, note. See also, 2 Cent. Law J. 374, 378, 447.)

And in Ohio and Iowa it is held that the garnishee cannot set up the claim of exemption in favor of its creditor. (*Conley v. Chilcote*, 25 Ohio St. 320; *Moore v. C. R. I. & P. Rld. Co.*, 43 Iowa, 385, 388.)

Thompson, in his work on Homesteads and Exemptions, (section 20,) says that "a court will not, in a controversy relating to a seizure of goods in its own state, give effect to the exemption laws of another state."

In *Morgan v. Neville*, 74 Pa. St. 52, Morgan owed Neville for wages, and Neville owed Shannon for goods. All resided in Pennsylvania, where the work was done and the goods were sold. Shannon sued Neville, however, in Maryland, and got service of garnishment process upon Morgan, who notified Neville of the proceeding. Judgment was rendered against Morgan as garnishee by default, and he paid the judgment. Afterward Neville sued Morgan, in Pennsylvania, for his wages, the same being exempt under the laws of Pennsylvania, but it was held that he could not recover, the money being legally appropriated by the proceedings in Maryland. The same doctrine is established in Ohio, (*B. & O. Rld. Co. v. May*, 25 Ohio St. 347,) although citizens of that state may be enjoined from resorting to the courts of other states for the purpose of evading the exemption laws of Ohio. (*Snook v. Snetzer*, 25 Ohio St. 516.)

The supreme court of Iowa holds that exemptions of property from process are governed by the *lex fori*, and not by the *lex loci contractus*. (*Helfenstein v. Cave*, 3 Iowa, 287; *Newell v. Hayden*, 8 id. 140.)

In *Moore v. C. R. I. & P. Rld. Co.*, supra, Moore was employed in Iowa by defendant, a corporation operating a railway in both Iowa and Missouri. A judgment was rendered against him in the latter state by a court having jurisdiction, and wages due him from defendant were garnished, notwithstanding under the laws of Iowa they would have been exempt; but it was held that the garnishee was not bound to interpose a defense based upon the Iowa exemption laws, and that the judgment rendered against the garnishee could not be attacked in a collateral proceeding for the purpose of again holding the defendant liable to Moore. And it was further held that a judgment *in rem* rendered in one state by a court of competent jurisdiction, cannot be assailed in another by a party to the record, who claims the subject-matter of the judgment.

In *Lock v. Johnson*, 36 Me. 464, it is decided that a trustee

indebted to the principal defendant for his personal labor is bound to disclose not only the indebtedness, but also that it accrued for such labor, and that if he fails to do so a judgment against him as trustee will furnish no protection in an action against him by the laborer for such service. But the statute in Maine provides that "no person shall be adjudged trustee, by reason of any amount due from him to the principal defendant as wages for his personal labor for a time not exceeding one month." See also *C. & A. Rld. Co. v. Ragland*, 84 Ill. 375, where the same doctrine is held under a statute nearly like that in Maine.

Our own statute differs materially from those of Maine, Wisconsin, Illinois, and Nebraska. It seems to grant a personal privilege in certain cases, which may be exercised by the debtor or not, at his election, and it is very doubtful whether the garnishee can interpose in behalf of its creditor. At all events, the garnishee has not made out a case of exemption for its creditor here under our statute which governs us, and which we must follow in preference to the Nebraska statute.

Judgment will be entered in favor of the plaintiff for $13.50, the amount due at the time the garnishment proceedings were instituted.

JOSEPH DONAHUE     } *Motion of B. & M. Rld. Co. in Nebraska to*
       *v.*        } *be discharged as garnishee.*
ELISHA P. REYNOLDS & Co. }

This action is brought to recover certain sums of money alleged to be due the plaintiff from the defendants on two certain contracts for grading for a railroad bed. The Burlington & Missouri River Railroad Company in Nebraska is summoned as garnishee, and it now moves the court to be discharged as such garnishee, on the ground that it is a Nebraska corporation, with its office and place of business as such corporation at Omaha, Nebraska, and that any indebtedness which may be due from it to the defendants is on account of services, labor and transactions which have occurred only within the state of Nebraska, and therefore are payable only in that state, at the office of the company at Omaha; and that it is not engaged in business in Atchison county, Kansas, otherwise than in the operation of leased property therein, and having no office in said county other than connected with and for the purpose of the operation of the Atchison & Nebraska railroad under lease to the garnishee. This motion is supported by affidavit.

The question presented by the motion is whether a railroad company, incorporated under the laws of a sister state and not incorporated in this state, but operating leased lines of railroad here in this county, can be held to answer as a garnishee for an indebtedness owing by it for services performed for it in the state of its incorporation, and payable at its general office in such state.

Several decisions in Massachusetts and elsewhere indicate that this question should be answered in the negative, unless the rule is changed by reason of the provisions of our statutes on the subject.

In *Tingley v. Bateman*, 10 Mass. 343, decided in 1813, the parties to the action and the trustee (or garnishee) were all inhabitants of Rhode Island, and no service was made upon any person except the trustee, and the action was dismissed.

In *Ray v. Underwood*, 3 Pick. 302, decided in 1825, the trustee not being an inhabitant of the state, he was held not liable to answer as a trustee, although the defendant was an inhabitant. And *Tingley v. Bateman* was cited as authority for the decision.

In *Hart v. Anthony*, 15 Pick. 445, decided in 1834, it was held that a non-resident was not liable to the trustee process, although he took an assignment of an insolvent debtor's property in Massachusetts, and the two cases above named were cited as authority.

In *Nye v. Liscombe*, 21 Pick. 263, decided in 1838, the action was dismissed, the trustee and defendant both being non-residents, although the trustee was duly notified.

In *Danforth v. Penny*, 3 Met. (Mass.) 564, decided in 1841, it was held that a foreign corporation that has no goods, effects, or credits, within the state, cannot be charged by the trustee process, although many of the officers of such corporation reside in the state, and its books and records are kept therein. *Tingley v. Bateman, Ray v. Underwood,* and *Hart v. Anthony* are cited as authority. The garnishee was the East Florida railroad company, a Florida corporation, and a sum of money was due by it to the defendant.

And in *Gold v. Housatonic Rld. Co.*, 1 Gray, 424, decided in 1854, it was held that a railroad company, incorporated by the laws of another state, cannot be charged by the trustee process, although in possession of railroads in the state under leases from the proprietors thereof, and *Tingley v. Bateman, Nye v. Liscombe,* and *Danforth v. Penny* were relied on as authorities.

The case in Gray seems directly in point unless our statutes require the application of a different rule. (See also Rorer on Inter-State Law, pp. 128, 129, and cases cited; Drake on Attachments, §§ 474 to 478, and cases cited.)

But the rule was changed by statute in Massachusetts in 1870, so that foreign corporations having a usual place of business in the state are now made liable to the trustee process. (See *Larkin v. Wilson,* 106 Mass. 120, decided in 1870.)

There is another line of decisions, however, tending toward the establishment of the doctrine that a foreign corporation, by establishing an agency in another state, thereby so far becomes an inhabitant of the latter state as to become liable to the process of its courts, either as a defendant or a garnishee. In Wisconsin it is held, that foreign corporations are liable to garnishment in that state, if they own property there and the cause of action in respect to them arose there. (*Brauser v. New England Fire Ins. Co.,* 21 Wis. 506.)

In Pennsylvania the courts hold that a railroad corporation that has accepted the privilege of extending its works through the state, upon the condition that it keeps at least one manager or other officer resident within the state, on whom process in actions against the company may be served, may be made garnishee in an attachment execution in respect to a debt owing by it to a non-resident. (*Fithian v. N. Y. & E. Rld. Co.,* 31 Pa. St. 114.)

In Missouri it is decided that a foreign incorporated insurance company which has established agencies within the state, and whose agents have complied with the provisions of the act regulating agencies of foreign insurance companies, is subject to garnishment process, and that service of such process may be had upon the authorized agent of the foreign insurance company, he being a chief or managing officer thereof within the meaning of the twenty-sixth section of the first article of the attachment act.

And the supreme court of Illinois has recently decided that a foreign corporation, doing business and having property in the state, may be garnished for a debt it owes to a resident of the state of its domicil in the courts of Illinois; that the act providing for service of process on corporations is not confined to domestic corporations, but is applicable to those of every kind, whether domestic or foreign, doing business in the state; that the garnishee summons is a process, and is therefore within the terms of the statute; that it is not necessary that the garnishee reside within the territorial

jurisdiction of the court to make the process effective to reach the funds in his hands; and that a debt due from a corporation to one of its employés is not local; nor to recover such must the action be local; neither is a demand necessary before an action can be maintained at another place. (*H. & St. J. Rld. Co., Garnishee, v. Crane,* 16 Western Jurist, 360, June, 1882.)

In this state an action upon a money demand may be brought against a foreign corporation in any county in which there may be property of, or debts owing to it, or where it may be found. (Code, § 53.) And where the plaintiff, his agent or attorney, shall make oath, in writing, that he has good reason to, and does, believe that any person or corporation to be named has property of the defendant (describing the same) in his possession, or is indebted to him, the plaintiff may have process of garnishment. (Code, § 200.)

Section 1 of ch. 123 of the Laws of 1871 (Comp. Laws 1879, p. 609) provides that "every railroad company or corporation, and every stage company doing business in the state of Kansas, or having agents doing business therein for such corporation or company, is hereby required to designate some person residing in each county into which its railroad line or stage route may or does run, or in which its business is transacted, on whom all process and notices issued by any court of record or justice of the peace of such county may be served."

Section 2 relates to the manner of designation of such person, and the revocation of such appointment; and section 3 provides that on failure of the company or corporation to designate such person, service may be made upon certain local officers or agents of the corporation, and that "such service shall be deemed complete and effectual."

Whatever may be the rule as to non-resident garnishees, or as to foreign corporations doing business in this state and having tangible property of a defendant in its possession but not within this state, it is the opinion of the court that under our statutes, when a railroad company incorporated under the laws of a sister state leases a line of railroad in this state and keeps local agents and operates its lines within this county, it is liable to the process of garnishment here for all indebtedness which it may be owing to a defendant, although by the usual course of its business such indebtedness is payable at the principal office of the corporation in the sister state; the corporation in such case being an inhabitant of this state for the purposes of business and the service of pro-

cess upon it, and the indebtedness not being of a local character, but enforceable in any jurisdiction in which service may be had.

The motion will be overruled.

As to our cross-petition in error, the claim is, that upon the findings of fact the defendant in error is entitled to judgment for the full sum of $26.25, and interest thereon at the rate of seven per cent. per annum, from May 22, 1882. As to this point, it is the exact question stated by the court in *Phelps v. Rld. Co.*, 28 Kas. 168, as the "third" proposition there stated and left undecided.

We are unable to find any authority in point, but we think the logic and reason of that case lead directly to its decision in our favor. It may be urged with some plausibility that a garnishee, at the time of answer cannot be compelled to disclose the exact conditions of a contract only partially performed, nor be held positively for the payment of money to a plaintiff which may never be earned by the defendant employé of the garnishee. But in this case the answer was voluntary on the part of the garnishee. The full sum of $26.25 was earned by defendant Jackson, and he was discharged by the railroad company before said answer was made, as is shown by the findings of fact.

Under these circumstances, we think the justice had jurisdiction to make the order he did make, for the payment of the entire $26.25 into court, and that the liability of the railroad company then became fixed and absolute, and cannot be evaded.

The opinion of the court was delivered by

BREWER, J.: The facts in this case are as follows: Plaintiff in error is a corporation created under the laws of the state of Nebraska, and having its principal office in the city of Omaha, in that state. It has leased and is operating a line of railroad running from Lincoln, Nebraska, to Atchison, Kansas, some thirty-seven miles of which are within the limits of this state. In the operation of this road it em-

ploys a station agent at the city of Atchison. One Jackson was in the month of November, 1881, a brakeman in the employ of said corporation, and employed on its trains running from Lincoln to Atchison. He was a married man, residing with his wife at Lincoln, Nebraska. On November 9, 1881, defendant in error commenced an action before a justice of the peace in the city of Atchison, against said Jackson, and caused garnishee process to be served on plaintiff in error. At that time plaintiff in error was indebted to said Jackson for wages already earned during the month of November, in the sum of $13.50. He continued in its employ until the 19th of the month, when the wages for the month then due him, $26.25, were paid to him by the corporation. It also appears that by the laws of Nebraska the wages for laborers for sixty days are exempt from seizure on legal process; so that we have these facts upon which to determine the rights of the parties: The employer is a corporation created by and existing under the laws of Nebraska, with its principal office and center of business in that state. Its employé, engaged in manual labor, also resides in that state. By the laws of Nebraska, where both employer and employé reside, his wages are exempt. The employer leases property and transacts business in this state. A creditor of the employé comes into the courts of this state and garnishes the employer for wages due the employé, claiming that though such wages are exempt under the laws of the state of Nebraska, they are not under the laws of the state of Kansas. Can such an action be maintained?

We think these propositions are sound: The laws of a state have no extra-territorial force. This as a general proposition is unquestioned, and includes within its scope exemption as well as other laws. So, although the laws of Nebraska, where employer and employé reside, exempt laborers' wages absolutely, it does not follow that the courts of another state will, in controversies pending before them, enforce the same exemption. On the contrary, the matter of exemption being

one affecting the remedy, at least within certain limitations, is one controlled by the *lex fori*, and not by the *lex loci contractus*. Therefore, although both creditor and debtor reside within the limits of the state, the exemption laws of that state do not control garnishee proceedings in another. (*Helfenstein v. Cave*, 3 Iowa, 287; *Newell v. Hayden*, 8 id. 140; *Moore v. C. R. I. & P. Rld. Co.*, 43 id. 385, 388; *Conley v. Chilcote*, 25 Ohio St. 320; *B. & O. Rld. Co. v. May*, 25 id. 347; *Pierce v. C. & N. W. Rly. Co.*, 36 Wis. 283; *Morgan v. Neville*, 74 Pa. St. 52; *Lock v. Johnson*, 36 Me. 464; *C. & A. Rld. Co. v. Ragland*, 84 Ill. 375.)

It may be conceded that in the courts of a state any citizen of that state may be enjoined from resorting to the courts of any other state for the purpose of evading the exemption laws of his own state. (*Snook v. Snetzer*, 25 Ohio St. 516.) But no such doctrine or implication therefrom applies in the case at bar, for while the debtor and the garnishee were citizens of Nebraska, the residence of the plaintiff, the creditor, is not disclosed. It does not appear that he was a citizen of Nebraska seeking through proceedings in a court of a sister state to avoid the exemption laws of his own. For aught that appears he is a citizen of Kansas, appealing only to the laws and the courts of this state for the collection of his debt, and simply denying that the laws of another state shall prevent the collection of his debt according to the laws and procedure of his own state.

Again, no question arises here as to the effect of a judgment against the garnishee in the courts of this state as against proceedings to collect the debt in the state of Nebraska, where the debt was created. As to that question, the cases of *Pierce v. Rld. Co.*, 36 Wis. 283, and *Moore v. Rld. Co.*, 43 Iowa, 385, seem to be divergent. As to which states the law correctly, we need not now inquire. The question in this case is not what is the effect of a judgment against a garnishee, but what ought to be such judgment. Of course no debtor should be required to pay his debt twice, but at the same time if he goes into a state outside the state of his

residence and transacts business therein, he must expect, as to all matters of procedure and remedy, to abide by the laws of that state. He may not claim the privileges and the protection of the laws of the state into which he enters and transacts business without submitting to the burdens and obligations of such laws. Coming into this state to transact business, he must abide by the exemption laws of this state; and when a party who for aught that appears, is a citizen of this state, invokes the process of our courts and the rules of our statutes to secure the payment of a just debt, a garnishee may not reply that by the laws of the state where he resides and where his employé also resides, his debt to such employé is exempt from all garnishee process. It cannot be doubted that the courts of the state where he resides will respect a judgment rendered against him in this state, provided he has made a perfect and full disclosure and a reasonable defense against the claim presented. The case in 36 Wis. 283, *supra*, contains nothing contradicting this proposition. We think, therefore, that it may be laid down as a legitimate conclusion from the authorities, that as the laws of a state have no extra-territorial force, and as the plaintiff in this action does not appear to have been a resident of Nebraska or under any obligation, legal or moral, to respect the laws of that state, his proceedings to compel the payment of a just debt from the defendant as garnishee cannot be defeated by the fact that the laws of the state where both debtor and garnishee reside exempt the debt from seizure under such process.

Again, so far as any question arises under the laws of this state defining exemption liability, it is enough to say that while the testimony disclosed is not perfectly satisfactory, it does not appear that all the testimony bearing upon that question is preserved in the record. Hence we cannot affirm that there was any error in the ruling of the trial court in this respect. As to the liability of defendant to garnishee proceedings like this, it must be sustained. Whatever doubts may have existed in some states, it seems to us clear that a

corporation or individual coming into this state, leasing property and transacting business here, becomes liable to garnishee proceedings. A mere debt is transitory, and may be enforced wherever the debtor or his property can be found, and if the creditor can enforce the collection of his debt in the courts of this state, a creditor of such creditor should have equal facilities. (*Brauser v. Ins. Co.*, 21 Wis. 506; *Fithian v. Rld. Co.*, 31 Pa. St. 114; *Bank v. Rld. Co.*, 45 Wis. 172; *Hannibal & St. J. Rld. Co. v. Crane*, Supreme Court of Illinois, reported in 16 Western Jurist, 360.)

For a further discussion of the questions in this case, we refer with approval to the two carefully-prepared opinions of the learned judge who tried this case in the district court, and which are presented in the brief of counsel for defendant in error. We cannot add to the arguments so clearly and ably stated therein by Judge Martin.

A cross-petition in error has been presented. So far as the attempt to attach a new case-made, or further portions of the record, is concerned, it is unauthorized, and all such matter must be stricken out. Upon the case-made itself, counsel present this question: At the time of service of garnishee process the railroad company was indebted to Jackson in the amount for which it was adjudged liable. He continued in the company's employ till the latter part of the month, under the same contract of employment. Now did the garnishee process bind only the amount earned by defendant and due from the garnishee at the time of service of process, or does it reach to all earned under the existing contract up to the answer day? This is the third case stated in the opinion in *Phelps v. Rld. Co.*, 28 Kas. 165, and left undecided at that time. Presented now, we are compelled to pass upon it. The ruling of the district court is correct. Garnishee proceedings mean this: the creditor takes the place of the debtor. "Only this and nothing more." The former takes only that which the latter could enforce. That which the garnishee owes, whether due or not, is appropriated; but the process has no future effect. It does not touch that which

may thereafter be earned, but which will be earned only by the debtor's subsequent labor. This is in accord with the principles underlying garnishee proceedings as stated by the text writers, and is just and reasonable.

There being no other question, the judgment is affirmed.

All the Justices concurring.