The Wyeth Hardware and Manufacturing Company,
Plaintiff in Error, v. H. F. Lang & Company,
Defendants in Error.

Kansas City Court of Appeals, May 1, 1893.

1. **Judgments:** FAITH AND CREDIT OF: JURISDICTION OPEN TO ATTACK. Under the United States Constitution the duly authenticated record of the judicial proceedings of a state have such faith and credit given them in the courts of every other state as they have by law or usage in the courts of such state; yet this does not preclude an inquiry into the jurisdiction of the court, nor into the right of the state to exercise authority over the parties or subject-matter, or whether the judgment is founded in fraud in its procurement.

2. **Injunction:** FOREIGN ATTACHMENT: EVASION OF LAW. A court of equity may at the suit of one citizen restrain another from prosecuting an attachment suit in a foreign state for the purpose of evading domiciliary laws; and this jurisdiction proceeds on the principle that the citizens of a state are bound by its laws, and cannot be permitted to evade them to the injury of other citizens.

3. **Action**: MALICIOUS ATTACHMENT: COMMON LAW. The common law affords a citizen of this state an ample remedy against another citizen of the state for a malicious attachment brought in another state.

4. **Judgments**: VOID FOR WANT OF JURISDICTION. Where it appears from the whole record that the court had no jurisdiction over the person or subject-matter, the judgment is void and will be so treated in a collateral proceeding.

5. **Kansas**: COMMON LAW: ATTACHMENT: PRESUMPTION AS TO LAW OF. The common law has never prevailed in Kansas. Attachment is unknown to the common law; and the Missouri courts will presume the attachment law of Kansas is the same as in Missouri.

5. **Debts**: SITUS OF CONTRACT: ATTACHMENT. Contracts respecting personal property and debts have no *situs*, but follow the owner and are disposed of by law of his domicile wherever in point of fact they may be; but this fiction yields to laws for attaching the property of nonresidents which assume that the property has a *situs* distinct from the owner's domicile; and the fact that the debt is by contract payable in a state other than that of the debtor, does not change the *situs* so as to prevent its attachment in the state of the debtor, *conflicting with Keating v. Refrigerator Co.*, 32 Mo. App. 292, and other cases of the St. Louis court of appeals.

6. **Litigation in Foreign Courts**: PRESUMPTION. Courts of equity refuse to interfere with the actions of persons litigating in other states, if it is apparent that full and complete justice may be done in such litigation, and that such justice will be done in such litigation is to be presumed, and a petition for an injunction to restrain the parties from such litigation must rebut such presumption and show a case of oppression or fraud.

*Error to the Jackson Circuit Court*—HON. JOHN W. HENRY, Judge.

CERTIFIED TO THE SUPREME COURT.

*Johnson & Wilson* and *George N. Elliott,* for plaintiff in error.

*Henry Wollman, Alexander New,* for defendants in error.

SMITH, P. J.—The petition in this case, which is for an injunction, alleged that both plaintiff and

defendants were business corporations organized and existing under the statutes of this state.

It was further alleged that the defendant had sued the plaintiff by attachment in one of the courts of the state of Kansas, and had procured the process of garnishment in said suit to be served upon certain debtors of the plaintiff, who were its customers and had become indebted to it for merchandise sold by it to them in this state where such indebtedness by the terms of the sale of such merchandise, for which it was incurred, was made payable; that the plaintiff here, who was the defendant in the attachment suit, was notified thereof by publication, and that judgment had been severally pronounced against the defendant and the garnishees therein. The petition fails to disclose the nature of the claim upon which the attachment proceedings were grounded. It appears that the plaintiff is a solvent corporation and that the defendants are about to take steps to compel by execution the garnishees to satisfy the amount of the judgments against them; that the garnishees, who are plaintiff's customers, are in great danger of having to pay their indebtedness to plaintiff twice, which would frustrate the trade relations between the former and the latter to the great injury of the latter, etc. The prayer was that defendants be enjoined and restrained from enforcing and collecting the judgments against plaintiffs and the garnishees, etc.

The defendant interposed a demurrer to the petition on the ground that it did not state facts sufficient to constitute a cause of action. The court sustained the demurrer, and, the plaintiff electing to abide by its petition, judgment was given accordingly. The plaintiff brings the case here by writ of error.

While it is undeniably true that under the constitution of the United States and the act of congress passed in pursuance thereof (Constitution of United

States, art. 4, secs. 1 and 2; Revised Statutes of United States, sec. 905), that the record and judicial proceedings of a state duly authenticated shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from whence the said record shall be taken, this does not preclude an inquiry into the jurisdiction of the court in which the judgment is rendered to pronounce it, nor into the right of the state to exercise authority over the parties or the subject-matter, nor whether the judgment is founded in, and impeachable for fraud in its procurement. *Kincaid v. Storz,* 52 Mo. App. 564; *Cole v. Cunningham,* 133 U. S. 107; *Crone v. Dawson,* 19 Mo. App. 214; *Matson v. Field,* 10 Mo. 103; *Marks v. Fore,* 51 Mo. 74; *Eager v. Stover,* 59 Mo. 88; *Barlow v. Steel,* 65 Mo. 619; *Napton v. Leaton,* 71 Mo. 358; *Railroad v. Sharritt,* 43 Kan. 375; *Thorn v. Salmonson,* 37 Kan. 441.

The interposition of a court of equity of a state may be invoked by one of its citizens to restrain another of its citizens from prosecuting an attachment suit in a foreign state for the purpose of evading their domiciliary laws without violating any rule of comity existing between the states. *Cole v. Cunningham, supra.* Mr. Justice STORY (Story's Equity Jurisprudence, sections 899, 900) thus states the principle: "But although the courts of one country have no authority to stay proceedings in the courts of another, they have an undoubted authority to control all persons and things within their own territorial limits. When, therefore, both parties to a suit in a foreign country are resident within the territorial limits of another country, the courts of equity in the latter may act *in personam* upon those parties, and direct them by an injunction to proceed no further in such suit.

In such a case these courts act upon acknowledged principles of public law in regard to jurisdiction. They do not pretend to direct or control the foreign court, but, without regard to the situation of the subject-matter of the dispute, they consider the equities between the parties and decree *in personam* according to those equities, and enforce obedience to their decrees by process *in personam*. * * * It is now held that, whenever the parties are resident within a country, the courts of that country have full authority to act upon them personally with respect to the subject of suits in a foreign country as the ends of justice may require, and with that view to order them to take or omit to take any steps and proceedings in any other court of justice, whether in the same country or in any foreign country." And a like principle was affirmed by the supreme court of the United States in *Phelps v. McDonald*, 99 U. S. 298. And this principle had been applied by the courts of the domicile against attempts of some of its citizens to defeat the operation of its laws to the wrong and injury of others. *Snook v. Snitzer*, 25 Ohio St. 516; *Keyser v. Rice*, 47 Md. 203; *Railroad v. Thompson*, 31 Kan. 180; *Zimmerman v. Franke*, 34 Kan. 650; *Wilson v. Joseph*, 107 Ind. 490; *Pickett v. Ferguson*, 45 Ark. 177; *Railroad v. Ramsey*, 45 N. Y. 637; *Kidder v. Tufts*, 48 N. H. 121; *Bank v. Lacombe*, 84 N. Y. 367; *Paine v. Lester*, 44 Conn. 196; *Sercomb v. Catlin*, 128 Ill. 556; *Dehon v. Foster*, 4 Allen, 545. The foregoing authorities plainly show that the ground or principle upon which courts of equity proceed in cases of this kind is that the citizens of a state are bound by its laws and cannot be permitted to do any acts to evade or counteract their operation, the effect of which would be to deprive other citizens of rights which those laws are intended to secure.

In looking at the plaintiff's petition it will be found that there is no act there alleged which brings its case within the principle just adverted to. If the Kansas attachment was wrongful and malicious and is likely to entail upon the plaintiff the injurious consequences he alleges, the common law prevailing in the state of his domicile will afford him ample remedy.

It is further contended by the plaintiff that the petition shows that the Kansas debts which were the subject of the garnishment were, by the terms of the agreement by which they were created, made payable at the place of the domicile of the plaintiff in this state, and that, therefore, the Kansas court was without jurisdiction to condemn the same. It is the well recognized rule of law that where it appears from the whole record of a court that it had no jurisdiction over the person or subject-matter, the judgment is void and will be so treated in a collateral proceeding. *Hope v. Blair,* 105 Mo. 35; *Adams v. Cowles,* 95 Mo. 507; *Carr v. Coal Co.,* 96 Mo. 155; *Brown v. Woody,* 64 Mo. 548; *Higgins v. Peltzer,* 49 Mo. 155; *Barlow v. Still,* 65 Mo. 619; *Napton v. Leaton,* 71 Mo. 366.

The common law has never prevailed in Kansas unless adopted there by statute (*Bain v. Arnold,* 33 Mo. App. 631). Besides this, the proceeding by foreign attachment was unknown to the common law. *Railroad v. Crane,* 102 Ill. 258. We are, therefore, justified in presuming that the attachment law of Kansas is the same as our own. *Bain v. Arnold, supra; White v. Charry,* 20 Mo. App. 389; *Hoffmeyer v. Losen,* 24 Mo. App. 652; *Flato v. Mulhall,* 72 Mo. 522; *Sloan v. Terry,* 78 Mo. 623. Under the statutes of this state suit by attachment may be begun and prosecuted against a non-resident defendant and his lands, chattels and credits made subject thereto. The process of garnishment in attachment cases may be employed to reach

the credits of the defendant. Revised Statutes, art. 1, ch. 10. And one non-resident may sue another non-resident by attachment under our statute. *Fielden v. Jessup,* 24 Mo. App. 91. The statute of this state just referred to also provides in attachment suits against non-resident defendants for service of summons upon them by publication and that the judgment and execution thereon, in case there is no appearance, shall run against the property attached.

The plaintiff's insistance is that the proceedings of the Kansas court are void for want of jurisdiction for the reason that the debts garnished had no *situs* in that state, and that consequently they were not liable to be attached there. Contracts respecting personal property and debts are now universally treated as having no *situs* or locality; and they follow the owner in point of right. They are deemed to be in the place and are disposed of by the law of the domicile of the owner wherever in point of fact they may be situate in accordance with the maxim *mobilia non habent situm* Story on Conflict of Laws, secs. 362, 399; State Tax on Foreign Bonds, 15 Wall. 320; *Renier v. Hurlbut,* 50 N. W. Rep. 783; *Wallace v. McConnell,* 13 Pet. 136; *Railroad v. Gomila,* 132 U. S. 485; *Bank v. Rollen,* 99 Mass. 313; *Trowbridge v. Means,* 5 Ark. 135. It has been ruled in effect that a debt without reference to where payable is deemed attached to the person of the owner so as to have its *situs* at his domicile, yet this fiction always yields to laws for attaching the property of a non-resident because such laws necessarily assume that the property has a *situs* distinct from the owner's domicile. Wherever the creditor might maintain a suit to recover the debt there it may be attached as his property, provided the laws of such place authorize it. *Harvey v. Railroad,* 52 N. W. Rep. (Minn.) 905; *Nichols v. Hooper,* 17 Atl. Rep. (Vt.) 134; *Railroad v.*

*Crow*, 102 Ill. 258; *Berry v. Davis*, 13 S. W. Rep. 979; *Railroad v. Dugan*, 31 N. W. Rep. 594; *Boyd v. Ins. Co.*, 16 S. W. Rep. 384; *Railroad v. Thompson*, 31 Kan. 180, and cases there cited; *Plimpton v. Bigelow*, 93 N. Y. 592.

According to the rulings in the cases just cited, it would seem quite obvious that the Kansas court had the requisite jurisdiction to impound the plaintiff's credits there by the attachment proceedings. And this doctrine seems just and reasonable, for, if the defendant cannot reach the plaintiff's credits by the attachment process in Kansas because they have a *situs* in this state, he cannot reach them in this state, because there can be no service of notice had on the garnishees in this state, so that it results that plaintiff's credits cannot be attached at all.

But we are confronted with contrary rulings of the St. Louis court of appeals to the effect that the *situs* of the debt is the place where the debtor resides, *unless the debt by the terms of the contract is made payable elsewhere, and in the latter event such situs is at the place where the debt is payable.* *Keeting v. Refrigerator Co.*, 32 Mo. App. 293; *Bank v. Wickham*, 23 Mo. App. 663; *Fielder v. Jessup*, 24 Mo. App. 91. And to the exception to the rule as indicated by the *italicized* words thereof, we cannot agree for the reasons already stated. We think the rule declared in *Harvey v. Railroad* and the other cases cited which are in accord with it will better subserve interstate trade and business relations than that embraced in the foregoing exception.

It does not appear that the plaintiff did not acquire knowledge of the pendency of the attachment suit in time to have made its proper defense in the courts of Kansas. Nor does it appear that full and complete justice would not have been done to all the parties in the Kansas courts had they appeared and litigated the

case there. The generally recognized doctrine is, that courts of equity may properly refuse to interfere with the action of persons litigating in other states if it is apparent that full and complete justice may be done to all parties in the litigation already pending in a sister state. There is nothing in the residence of the parties to this proceeding, nor in the circumstances alleged in the petition, that tends to rebut the presumption, which we must indulge, that in their Kansas litigation full and complete justice would have been done them by the courts of that state had they afforded them an opportunity to do so. The Kansas court in which the judgment was rendered against plaintiff upon publication of notice is still open to it. We will presume, as already stated, that the attachment laws of that state are like ours, and that as here the plaintiff may avoid a judgment of that sort within two years after its rendition if entitled thereto by a resort to the proceeding the statute prescribes for that purpose. Revised Statutes, secs. 580, 586. The case stated in the petition is not one calling for the interference of a court of equity to control the conduct of the defendants to prevent oppression or fraud, nor, indeed, is there any allegation of fact that would justify a court of equity in the use of its preventive injunctive process. But since the rulings which we have herein made are contrary to those of the St. Louis court of appeals in the cases cited it becomes our duty under the constitution to certify the case to the supreme court, which is accordingly done. All concur.

ELLISON, J. *(concurring)*.—In concurring in the foregoing opinion I have some fear that an interpretation too narrow may be given to the exception mentioned to the rule stated that a debt has no *situs*. There are other exceptions besides in attachment; as,

for instance, for the purposes of administration, the debt has a *situs* where the debtor resides. *Becraft v. Lewis*, 41 Mo. App. 546, and cases cited.