# SUPREME COURT,

## STATE OF KANSAS.

## JANUARY TERM, 1886.

PRESENT:

Hon. ALBERT H. HORTON, Chief Justice.
Hon. DANIEL M. VALENTINE, ⎫ Associate Justices.
Hon. WILLIAM A. JOHNSTON, ⎭

The Kansas City, St. Joseph & Council Bluffs Railroad Company, et al., v. W. M. Gough and J. M. Linley, Partners as Gough & Linley.

1. Case-Made; Findings; Review. Where a case-made shows that all of the evidence offered upon the trial to sustain a particular finding of fact of the trial court is preserved therein, the supreme court can decide whether such finding is sustained by any evidence, although all of the evidence presented upon the trial upon other issues of fact is not embraced in the record.

2. Earnings of Debtor; Exemption; Residence of Debtor. The earnings of a debtor for his personal services at any time within three months next preceding the attempt to subject such earnings to the payment of his debts are exempt under § 490 of the civil code and § 157 of the justices act, from such payment, if it be made to appear that such earnings are necessary for the maintenance of his family, supported wholly or partly by his labor; and as the statute of the state does not restrict the exemption to residents, the courts have no authority to make such restriction; therefore, no distinction is to be made between residents and non-residents.

3. Garnishment; Non-Resident Debtor. Where a citizen of this state attempts by a proceeding in garnishment against a foreign railroad corporation to subject to the payment of his claim in the courts of this state the personal earnings of a citizen of another state, which per-

sonal earnings are by the laws of this state, and also of such other
state, exempt from being so applied, the earnings of such debtor are
exempt from such process.

4. ——————— *Case Distinguished.* The case of *The Burlington & Missouri
River Railroad in Nebraska v. T. W. Thompson*, 31 Kas. 180, distin-
guished.

*Error from Atchison District Court.*

ON March 7, 1884, W. M. Gough and J. M. Linley, part-
ners as *Gough & Linley*, filed their bill of particulars against
*The Kansas City, St. Joseph & Council Bluffs Railroad Com-
pany*, alleging that on January 23, 1883, they brought their
action before a justice of the peace of Atchison county against
Jesse Gaut for $20, and that in said action upon due pro-
ceedings certain money due to said Gaut was garnished in the
hands of the railroad company; that on February 3, 1883,
judgment was rendered in favor of the plaintiffs against said
Gaut, by the justice, for $20, and costs of suit taxed at $11.85,
of which $5 were costs of the proceeding against the garnishee
in the action; that on February 3, 1883, the railroad company
filed its answer as garnishee and disclosed $20 due by it to
said Jesse Gaut; that on February 15, 1883, an order was
issued by the justice of the peace to the railroad company to
pay the said $20 into court, to be applied upon the judgment
against Gaut; that the order was served on the company, but
has never been complied with; that on January 14, 1884, a
second order was issued by the justice and served upon the
railroad company to pay the money into court, which second
order was likewise disobeyed; that the judgment in favor of
plaintiffs against the said Gaut is in full force and wholly un-
paid. Wherefore, the plaintiffs demanded judgment against
the company for the sum of $20 and interest from February
15, 1883, and costs. Trial had before the justice on April
14, 1884, and judgment rendered in favor of plaintiffs for
$25.94 and costs, taxed at $5.80. The railroad company ap-
pealed the case to the district court. With leave of the court,
Jesse Gaut was made a party and filed his answer, to which
plaintiffs filed a reply. Trial had July 28, 1884, a jury being

waived by the consent of the parties.    The court made the following findings of fact:

"1. The plaintiffs are and for several years last past have been partners in business as physicians and surgeons at Atchison, in Atchison county, Kansas; as such, during the year 1882, they rendered professional services to the family of Jesse Gaut, then residents of Atchison, Kansas, at the request of said Jesse Gaut; but prior to January, 1883, said Jesse Gaut and his family removed from Atchison, Kansas, to St. Joseph, Missouri, where they have ever since lived and resided as their home.

"2. On January 23, 1883, the plaintiffs commenced an action against said Jesse Gaut before R. B. Drury, a justice of the peace of Atchison county, Kansas, to recover the sum of $20 for said professional services of the plaintiffs, and at the same time they caused proceedings in garnishment to issue to said defendant railroad company as garnishee.    On February 3, 1883, said railroad company answered as garnishee, to the effect that said Jesse Gaut, as an employé of the garnishee, had performed services for it ever since January 1, 1883, and had earned $20 for said services which would become due and payable February 15, 1883, and that said sum was for the last thirty days' wages of said Jesse Gaut as an employé of the garnishee; and at the same time said railroad company filed a verified motion for a discharge as garnishee, and the affidavit of said Jesse Gaut was also then and there filed, asking said wages be declared exempt to him.    Neither the answer of the garnishee, the verified motion of the garnishee, nor the affidavit of said Jesse Gaut, showed that such wages or earnings of said Jesse Gaut were necessary for the maintenance or use of a family supported wholly or partly by his labor, and said fact was not in any other manner made to appear.

"On February 10, 1883, said Jesse Gaut appeared by his attorney in said action, who was also the attorney of said railroad company, and a trial was had, which resulted in a judgment in favor of the plaintiffs against said Jesse Gaut for $20 debt, and $8 costs.    On February 15, 1883, the plaintiffs and said Jesse Gaut and said railroad company appeared, and said verified motion for discharge of garnishee came on to be heard, and the answer of said garnishee and said verified motion and said affidavit of Jesse Gaut, all filed February 3, 1883, as aforesaid; and also the exemption statutes of Missouri were

presented to the justice, which was all of the evidence pro-
duced.   And thereupon said justice overruled said motion for
discharge of the garnishee and for declaring said money exempt,
and made an order for the garnishee to pay said sum of $20
into the hands of said justice to apply upon said judgment
and costs; to which rulings and orders said Jesse Gaut and
said railroad company then and there duly excepted.   On
February 22, 1883, a bill of exceptions was duly allowed to
said railroad company as garnishee, and signed, and filed by
the justice.   On January 14, 1884, said justice made another
order for said railroad company as garnishee to pay in said
money in satisfaction of said judgment and costs—the total
costs to that time being taxed by the justice at $11.85.   No
part of said money has ever been paid in by the garnishee,
and no part of said judgment or costs has ever been paid, and
said judgment remains in full force and unsatisfied.

"3.  Up to the time of the garnishment, January 23, 1883,
the amount of wages earned by said Jesse Gaut was fully $20
for January, but at the end of the month his wages had
amounted to $43.20, but the same was not payable until Feb-
ruary 15, 1883.   Before the time for answer of the garnishee,
said Jesse Gaut notified said garnishee that he claimed said
wages of $43.20 as exempt.

"4.  Said railroad company as garnishee instituted proceed-
ings in error in this court to reverse the order of the justice
of the peace requiring the garnishee to pay said sum of $20
into the hands of said justice to apply on said judgment, but
afterward said proceedings were dismissed by order of this
court.   No proceedings in error were ever instituted by said
Jesse Gaut, and he supposed, until about Christmas-time, 1883,
that said money had been so paid in accordance with said order
of the justice of the peace.   Said railroad company retained
$20 out of the January earnings of the said Jesse Gaut, and
paid him the balance; after this action was commenced said
railroad company also retained $5 more out of his subsequent
earnings, but did not explain to him and he did not know the
reason for so doing.   After the order of the justice of the
peace was made, said Jesse Gaut did not desire any further
litigation, but was willing that said sum of $20 should be
applied toward the satisfaction of said judgment, and the de-
fense of this action by said railroad company was made with-
out the knowledge of said Jesse Gaut until about June, 1884,
and it was at the solicitation of said railroad company that he
consented to be made a party to this action in this court.

" 5. On the trial of this action, the facts stated in conclusion of fact No. 1 were made to appear, and also the further facts that the plaintiffs' claim was for professional services as physicians; that the $20 garnished in said former action was for earnings of said Jesse Gaut for his personal services for said railroad company within less than three months next preceding the commencement of said garnishment proceedings, and that such earnings were and are necessary for the maintenance and use of the family of said Jesse Gaut, who were and are supported wholly by his labor."

Thereon the court made the following conclusion of law:

"The plaintiffs are entitled to recover of the Kansas City, St. Joseph & Council Bluffs Railroad Company, defendant, the sum of $20, with interest thereon from February 15, 1883, ($2.03,) amounting to $22.03, and costs of suit."

Judgment having been rendered in favor of the plaintiffs and against the defendants for $22.03, and all costs, the defendants excepted thereto, and bring the case here.

*Jackson & Royse*, for plaintiffs in error.

*Hudson & Tafts*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: Two questions are presented in this case: First, are the findings of fact supported by the evidence? Second, are the personal earnings of Jesse Gaut, due to him from the Kansas City, St. Joseph & Council Bluffs Railroad Company, exempt from the payment of the judgment recovered against him by Gough & Linley? The disputed finding of fact is as follows:

"After the order of the justice of the peace of February 15, 1883, overruling the motion for the discharge of the garnishee and denying the exemption, said Jesse Gaut did not desire any further litigation, but was willing that said sum of $20 should be applied toward the satisfaction of the judgment."

The only evidence in the record that we can find tending in any way to support this conclusion of fact, is as follows: Jesse Gaut testified:

"I owe Gough & Linley, who are physicians in Atchison,

for attendance upon my wife; have wanted and intended to pay them what I owe them, but my wife has been weakly and it has cost me my wages to live and support my wife and child; the railroad company first notified me that it had been garnished for $20 on January 23, 1883; they kept that amount out of my wages and paid me the balance due; after that, and along in January, 1884, I was notified that the company was garnished again for it, but after learning it was garnished on the same old case, they paid me all that was due, excepting $25 which was due me for my personal earnings at that time."

On cross-examination he further testified:

"I don't know how many trips I made, or how much I made in January, 1883, before the 23d of the month; the railroad company kept back $20 of my January wages for 1883, and told me I was garnished again in January, 1884, and kept back $5 more. I supposed the $20 had been paid to Gough & Linley until after the other money was kept back; I wrote a letter to Dr. Gough after the $5 was kept back; I don't think I said I was willing to have that debt paid out of the money, and have never signified my willingness to pay the debt out of this money; I wrote the letter to Dr. Gough about last March; didn't write that I wanted it [the debt] paid, and supposed it had been; I wrote that they had garnished me once before for that debt, and wanted to know what they garnished my wages again for. When I was notified of the first garnishment, I went to the office of John Taylor, a justice of the peace in St. Joseph, and told him that I had been garnished, and stated the facts, and a young man in the office wrote a notice to the railroad company that I claimed all the earnings due me as exempt from execution or attachment. I signed and swore to it, and then delivered it to Mr. Carter at the superintendent's office of the railroad company."

Dr. W. M. Gough testified as follows:

"I received a letter about Christmas from Jesse Gaut; it is lost; I think he said in that letter that $20 or $25 more had been kept out; I think he said he intended to pay the debt, and that it had been paid, but would not pay it twice; I never got anything on this debt; he never denied owing the debt to me; he complained that his wages were garnished twice on the debt; I cannot recollect exactly what was in the letter; I have stated the substance as I remember it."

It further appears from the record, that Gough & Linley commenced their action against Jesse Gaut and garnished the wages due him from the railroad company on January 23, 1883; on the same day, he served a written notice upon the railroad company, signed and sworn to by him, claiming all the wages due to him as exempt from execution or attachment; then, on February 3, 1883, the railroad company answered as garnishee that the moneys due Gaut were his wages as an employé, and exempt, and at the same time the affidavit of Gaut was filed before the justice asking his wages to be declared exempt to him. On February 10, 1883, Gaut appeared by his attorney to defend the action, in which a judgment was rendered against him. On February 15, 1883, Jesse Gaut, and also the railroad company, appeared before the justice and presented the statutes of Missouri, claiming that the wages garnished were exempt. After the order of February 15, 1883, was made for the garnishee to pay the $20 into the hands of the justice to apply upon the judgment and costs, nothing further was done toward the enforcement of this order until January 14, 1884, when the justice made another order for the railroad company, as garnishee, to pay the money in satisfaction of the judgment and costs. The railroad company refusing to comply with the order, the plaintiffs filed their bill of particulars on March 7, 1884, asking judgment in their favor and against the defendants for the $20 garnished, with interest from February 15, 1883, and also for all costs. The railroad company filed its answer on April 12, 1884; judgment was rendered against the company on April 14, 1884, for $25.94 and costs, taxed at $5.80; the case was then appealed by the railroad company to the district court; on June 24, 1884, Jesse Gaut presented his motion for leave to be made a defendant and to file his answer; this was granted, and his answer filed; ever since, he has continued to be vigilant in claiming his exemption.

Upon the oral evidence and the records before the justice of the peace and the district court, we do not think that there is any evidence to support the finding that Gaut did not desire

any further litigation, or was willing that the sum of $20 should be applied in satisfaction of the judgment rendered before the justice of the peace. The most that can be said is, that he supposed when the railroad company retained $20 the company had paid it to Gough & Linley, but when he found this was not the case, he was anxious to claim all his wages as exempt.

"Until the right of exemption is waived, or lost by some unequivocal act or declaration of the debtor, it remains with him, and any of his property which is included within the terms of the statute is beyond the reach of the officer and his process." (*Rice v. Nolan*, 33 Kas. 28.)

Counsel for plaintiffs below suggest that as all the evidence is not preserved, the findings of the court are conclusive. The record, however, shows that upon the disputed findings of fact all of the evidence that was offered is embraced therein.

1. Finding; evidence; review.

It is the claim of defendants below that the judgment of the district court was rendered upon the finding that Gaut was not a resident of this state at the time of the garnishment. If such was the ruling it was erroneous.

"Under the statute, the earnings of a debtor for his personal services at any time within three months next preceding the attempt to subject such earnings to the payment of his debts are exempt from such payment, if it be made to appear by the debtor's affidavit, or otherwise, that such earnings are necessary for the use of his family, supported wholly or partially by his labor; and no distinction is made by the statute between residents and non-residents, or between debts created in Kansas and debts created elsewhere; and the weight of authority seems to be that where the statutes do not make any distinctions, that no such distinctions exist; that if the statutes do not restrict the exemption of property for the payment of debts to residents, or to some other particular class of persons, the courts have no authority to make such restriction, and the statute will apply to all classes, non-residents as well as residents." (*Mo. Pac. Rly. Co. v. Maltby*, 34 Kas. 130; *Zimmerman v. Franke*, 34 id. 650.)

2. Earnings of debtor; exemption; residence of debtor.

3. Garnishment; non-resident debtor.

In *B. & M. Rld. Co. v. Thompson,* 31 Kas. 180, the case was discussed and decided, whether the exemption laws of

**4. Case, distinguished.** Nebraska have force in this state, the trial judge remarking, that "the showing was insufficient to sustain the exemption under the laws of Kansas," and in the conclusion of his opinion, said: "The garnishee has not made out a case of exemption for its creditor here under our statute which governs us, and which we must follow in preference to the Nebraska statute." If it be claimed that the judgment rests upon the adjudication of the justice refusing to set aside the garnishment and discharge the fund as exempt, it is sufficient to say that such an order is not conclusive. Such a ruling is neither a judgment nor a final order, and is not reviewable by proceedings in error. Neither the railroad company nor Gaut could successfully have instituted proceedings in error in the district court. (*Zimmerman v. Franke,* supra; *Miller v. Noyes,* 34 Kas. 13; *Board of Education v. Scoville,* 13 id. 32; *Phelps v. Railroad Co.,* 28 id. 169; *Mull v. Jones,* 33 id. 112.)

We think there is nothing whatever in the suggestion that Gaut was not properly a party to this action in the district court, or that the exemption had been lost by lapse of time. The last finding of the court shows that the money garnished was for the earnings of Gaut for his personal services for the railroad company within less than three months next preceding the garnishment proceeding, and that the earnings were and are necessary for the maintenance and use of his family, which was and is supported wholly by his labor.

The judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.