BROWN v. THE CHICAGO, BURLINGTON AND KANSAS CITY RAILWAY COMPANY, *Appellant.*

1. **Railroad:** ACTION FOR APPROPRIATING LAND: INSTRUCTION. Where one seeks to recover damages from a railroad company for entering upon and appropriating a strip of land one hundred feet wide for railroad purposes, and there is no issue as to the ownership of other land described in the petition, the instruction should be confined to the strip in question.

2. ———: ———: QUESTIONS OF LAW AND FACT. The ownership of the strip is a question of law, but the facts from which such ownership is to be determined should be submitted to the jury.

3. **Adverse Possession.** A continuous exclusive possession for ten years, under claim of ownership, is necessary to support a title by adverse possession.

4. **Practice:** INSTRUCTIONS. It is error to give instructions not warranted by the pleadings or the evidence.

5. **Practice in Supreme Court:** REVERSAL OF JUDGMENT. Where the instructions are erroneous, and there is no substantial evidence to support the verdict, it is error for the lower court to deny a new trial, and, in such case, the supreme court will reverse the judgment without remanding the cause.

*Appeal from Linn Circuit Court.*

REVERSED.

*H. Lander* and *B. J. Northcott* for appellant.

(1) Respondent's first instruction given is erroneous and misleading in that it bases the plaintiff's right of recovery wholly upon his ownership of the eighty acres described in the petition, without regard to the respective rights of the parties to the one hundred feet right of way through the tract, which is really the only matter in dispute. And, again, said instruction requires the jury to pass on the question of title, without submitting any question of fact, upon which they

might predicate a conclusion. (2) Respondent's second instruction is erroneous in that it assumes as a fact that James Welsh, the grantee of Lamme, was in the actual possession of the one hundred feet right of way before and at the time of the condemnation, which is a disputed matter. *Lynde v. Williams*, 68 Mo. 360; *Green v. Railroad*, 60 Mo. 405; *Peck v. Ritchey*, 66 Mo. 114. Again, said second instruction fails to submit to the jury whether Welsh, and those holding under him, so held the open, hostile, exclusive, notorious, continuous, adverse possession of the strip, claiming right or title thereto. *Bradley v. West*, 60 Mo. 33; *Boogher v. Neece*, 75 Mo. 384; *Crispen v. Hannovan*, 50 Mo. 536; *Key v. Jennings*, 66 Mo. 356. (3) Respondent's third instruction is misleading, confusing, a perturbation of the whole record; and is applicable to no issue or controversy in the case. Appellant nowhere interposed the statute of limitations as a defense. The instruction can have no purpose unless it be an intimation to the jury to find for the plaintiff. *Camp v. Heelan*, 43 Mo. 591; *Hassett v. Rusk*, 64 Mo. 325, 328; *Quinliven v. English*, 44 Mo. 46, at p. 51. (4) Respondent's own showing makes a case of mixed possession of the one-hundred-feet strip in 1870, the railroad company holding possession with title, and Welsh (under whom plaintiff claims) holding without title. Respondent's instructions nowhere present the law applicable to such state of facts. *Crispen v. Hannovan*, 50 Mo. 536; *Bradley v. West*, 60 Mo. (5) From November 5, 1879, to January 8, 1880, while Rummell owned the tract of land, there is no word of evidence as to possession of the one-hundred-feet strip, adverse or otherwise. Adverse possession must be proven; it cannot be presumed. *Lynde v. Williams*, 68 Mo. 369–370. (6) It is established by respondent's own showing, and stands uncontradicted, that from January 8, 1880, to the spring of 1882, while Mitchell owned the tract of land, no title or right was claimed to the one-hundred-feet strip as against the

railroad company, and, without counting part of this time, no limitation can be made out. (7) The evidence not only does not fail to show, but does affirmatively show, that Mitchell, from January 8, 1880, to the spring of 1882, did not claim the one-hundred-feet strip of land adversely to defendant company, or to its predecessor; therefore, the proof entirely fails to make out the statutory period of ten years' limitation. (8) Appellant's tenth instruction, refused by the court, should have been given. It is the only instruction in the case that submits to the jury, upon all the evidence, the question whether the possession of the one-hundred-feet strip, claimed by respondent, was held for a period of time named, adversely, under claim of right or title, the truth of which would settle the whole controversy for or against appellant, irrespective of all other facts in the case. (9) Plaintiff, not being in possession at the time of the alleged trespass, July, 1882 (Mitchell, his grantor, having retained his former possession of the farm for the crop year of 1882), and defendant having taken actual possession of the one-hundred-feet strip in September, 1881, and held the possession ever since, plaintiff cannot recover in this action, but must be remitted to his ejectment, where the title and all damages can be settled. *Brown v. Carter*, 52 Mo. 46; *Cochran v. Whiteside*, 34 Mo. 417; *Ware v. Johnson*, 55 Mo. 500; *Brown v. Hartzell*, 87 Mo. 564.

*A. W. Mullins* with *O. F. Libby* for respondent.

(1) The circuit court did not err in giving the plaintiff's first instruction. If the plaintiff was the owner and in the actual possession of the land in question, and that while he so owned and possessed it the defendant, without the consent and against the will of the plaintiff, went upon the premises and constructed its railroad, and appropriated to its own use a strip of land, one hundred feet wide, through such premises, for

right of way, then it is clear that the plaintiff was entitled to recover. And so the jury were directed by that instruction. *Combs v. Smith*, 78 Mo. 32; *Welsh v. Railroad*, 19 Mo. App. 127. (2) There was no error committed in giving plaintiff's second instruction. *School District v. Georges*, 50 Mo. 194; *Railroad v. McGee*, 75 Mo. 522; *Callaway County v. Nolley*, 31 Mo. 393; *Welsh v. Railroad*, 19 Mo. App. 127; *People v. Clarke*, 9 N. Y. 349; *Rowan's Exr's v. Portland*, 8 B. Mon. 232, 259; Wood on Lim. of Actions, p. 92; 11 Cent. Law. Jour., pp. 241–242. (3) The plaintiff's third instruction is the law, and could not possibly have prejudiced the defendant. It simply directed the jury that plaintiff's right of action, "if any existed in his favor under the instructions," was not barred by limitation, if his action was commenced within five years next after defendant's entry upon and taking possession of plaintiff's land. *Combs v. Smith*, 78 Mo. 32. (4) The defendant's fourth, fifth, sixth, seventh, eighth and ninth instructions submitted the question of the statute of limitations to the jury in the most favorable manner for the defendant, and required the very highest degree of proof on the part of plaintiff. There was no error committed by the court in refusing to give defendant's tenth instruction. *State v. Brokerage Co.*, 85 Mo. 411; *Flint v. Young*, 70 Mo. 221; *Spohn v. Railroad*, 87 Mo. 74; *State v. Gann*, 72 Mo. 374. (5) The contention here by appellant that plaintiff's evidence was insufficient to authorize the giving of instructions, or to support the verdict, is not predicated on any point made or question raised on the trial. No demurrer to the evidence was offered, nor was any instruction asked upon the whole evidence. Appellant also asked for instructions on the question of the statute of limitations, and should not now be heard to complain that instructions were given on that question. *Keen v. Schnedler*, 92 Mo. 516. (6) The doctrine announced by the

instructions asked by the defendant and given by the court on the statute of limitations is the same as that contained in plaintiff's instruction on that issue. "It is settled that one party cannot be allowed to complain of another's instructions where his own announced the same doctrine." *Reilly v. Railroad,* 94 Mo. 600; *Thorpe v. Railroad,* 89 Mo. 650; *Holmes v. Braidwood,* 82 Mo. 610. (7) There being sufficient evidence upon which to submit the case to the jury for their determination, and the jury having found for the plaintiff, and the defendant's motion for a new trial having been overruled by the trial court, and the verdict approved thereby, this court will not review the evidence to ascertain with respect to which side, in the opinion of this court, had the weight and preponderance of the evidence. The jury are the rightful and legitimate triers of the facts. *Oglebay v. Corby,* 96 Mo. 285; *Price v. Evans,* 49 Mo. 396; *Gillespie v. Stone,* 43 Mo. 350; *McAfee v. Ryan,* 11 Mo. 364.

BRACE, J.—In this action the plaintiff seeks to recover damages from the defendant for wrongfully entering upon the north half of the northwest quarter of section 8, township 57, range 20, in said county and appropriating a strip of land one hundred feet wide through said tract for the purposes of its railroad, and offers to convey said strip to the defendant upon the payment of said damages and a reasonable compensation therefor.

The answer sets up ownership by the defendant of the one-hundred-feet strip by virtue of a condemnation proceeding, commenced March 11, 1870, and concluded April 11, 1870, by the Missouri Central Railroad Company against one Milton Lamme.

It is conceded that at the time these proceedings were instituted Lamme was the owner in fee simple of said eighty-acre tract of land and that the plaintiff by mesne conveyances has acquired his title thereto. It is

also conceded that the said Missouri Central Railroad Company by virtue of the condemnation proceedings aforesaid obtained Lamme's title to the one-hundred-feet strip across said tract for a right of way for its railroad, and that the defendant by mesne conveyances has acquired all the right, title and interest of said railroad company thereto.

In the summer of 1870, under the right acquired by said condemnation proceedings, the Missouri Central Railroad Company entered upon said strip and graded a roadbed on it. This work ceased during that summer, and thereafter neither said railroad company nor any of its grantees did any work upon, or exercised any acts of ownership over, said strip until the fall of 1881. In September of that year the defendant by Elijah Smith and his employes entered upon the right of way, and between that time and the following December dressed and finished the old grade and put it in condition for the track which was laid thereupon in the spring following, and afterwards in the spring and summer of 1883 fenced the right of way. Pending said condemnation proceedings and on the first of April, 1870, Lamme conveyed said eighty-acre tract by warranty deed to James Welsh who was in possession thereof at the time the roadbed was graded by the Missouri Central Railroad Company, in the summer of 1870, and who continued in possession thereof until some time in the year 1879. On the fifth of November, 1879, all his right, title and interest in said tract of land was sold under a special execution upon a judgment of foreclosure of a deed of trust in favor of R. W. Mitchell, administrator of James Lamme, given by Welsh to secure the payment of the purchase money for said land to said Lamme, and J. D. Rummell became the purchaser and received the sheriff's deed therefor.

On the fourth of January, 1880, Rummell and wife conveyed the tract to Sarah C. Mitchell, wife of the said R. W. Mitchell, and on the second of October, 1882,

Sarah C. Mitchell and husband conveyed the tract to the plaintiff. It does not appear that Rummell was ever in actual possession of the tract. The evidence tends to prove that R. W. Mitchell in right of his wife succeeded Welsh in the possession some time in the latter part of the year 1879, and continued in possession until the sale to plaintiff which took place about the first of April, 1882, at which time the tract was in the actual possession of one Alban as tenant of Mitchell, and by the terms of the contract between plaintiff and Mitchell the latter was permitted to remain in possession until the crop of that season was matured and taken off. In October, 1882, the plaintiff received his deed from Mitchell, having complied with the terms of his contract, and entered into possession of the tract, and afterwards on the fifth of April, 1886, commenced this action.

The controlling question in the case on the evidence, under the pleadings was whether the plaintiff and his grantors by continuous adverse possession had acquired legal title to the right of way of one hundred feet across said eighty-acre tract—vested in the defendant by virtue of said condemnation proceedings and the mesne conveyances from said Missouri Central Railroad Company. The case was tried in the circuit court before a jury, and the question of fact submitted upon instructions, of which those given for the plaintiff the defendant complains, and a verdict returned in favor of the plaintiff and his damages assessed at the sum of two hundred and fifty dollars, upon which judgment was rendered and the defendant appeals. The defendant also complains of the action of the court in refusing an instruction asked upon the question of adverse possession.

The instructions given for the plaintiff upon the question of adverse possession are as follows:

"1. The court instructs the jury that if they find from the evidence that the plaintiff herein was the

owner and in actual possession of the premises described in the petition, and that while he so owned and possessed the same the defendant by its servants and employes entered into and upon such premises, without the consent and against the will of plaintiff, and built and constructed the railroad through said premises, and that defendant has since maintained, run and operated said railroad, and has fenced up, and appropriated to its own use a strip of land one hundred feet wide, then the finding should be for the plaintiff, for the amount. of the damages so sustained by him as shown in the evidence, in all, not to exceed one thousand dollars.

"2. The court instructs the jury that if they believe from the evidence that James M. Welsh, the grantee of Milton Lamme, and those claiming under him, continued in the actual possession of the strip of land sought to be condemned for a right of way for the railroad, after the proceedings were had for that purpose in the year 1870, and did not surrender the possession of the said strip of land through said premises to the railroad company, but held and continued the actual possession thereof, continuously after the grading was done, for themselves as against the railroad company for a period of ten years or more before the defendant took possession of said strip of land and built its road thereon, and that said defendant by its agents and employes took possession without the consent and against the will of the owner, then the jury should find for the plaintiff.

"3. The court further instructs the jury that, although they may find from the evidence that in the month of September, 1881, the defendant caused some work to be done on the road within the premises described in the pleadings, and afterwards, in the year 1882, laid its railway track over the same, then plaintiff's right of action, if a right of action existed in his favor

under the instructions, was not, and is not, barred by limitation."

The instruction asked for the defendant, and which the court refused to give, is as follows :

"10. If the jury believe, from the evidence, that Sarah 'C. Mitchell, while the owner and in control of the adjoining lands, did not claim the title to the strip of ground one hundred feet wide, but regarded the same as the property of the defendant or its grantors, they will omit the time said lands were owned by said Mitchell from their computation of time, and, if said Mitchell did not claim the title thereto, then the plaintiff and those under whom he claims must have had ten years' actual, open, notorious and adverse possession thereof, with claim of title, for more than ten years prior to the purchase by Mitchell, and, unless they do so find, they must find for the defendant."

If the plaintiff acquired Lamme's title to the one-hundred-feet strip, and a right of action in this case, it was by virtue of a continuous adverse possession thereof for a period of ten years or more by his grantors, after the entry of defendant's grantors under the condemnation proceedings, and before this suit was commenced. and before the entry of defendant's employes in September, 1881. The possession of Welsh and Mitchell, it is contended for plaintiff, constitutes such continuous adverse possession. The evidence upon which this contention is based is as follows :

Mr. Welsh, who, it seems, was a nursery man, testified as follows ( in chief ):

" Q. Do you know what time the original grading was done over the land in question? A. In the summer of 1870.

" Q. By whom was it done ? A It was done by Mr. Cundiff and Maj. McKay.

" Q. I will get you to state after that work was done what you did with the land ? About the use of this

Brown v. The Chicago, B. & K. C. Ry. Co.

one hundred feet here in question? *A.* Well, I went to work and cleaned up the place; there was not much grading done as it was level land, and then I planted some fruit trees.

"*Q.* What time did you begin work there? Was it after the work on the road was done? *A.* I never regarded that the road had any right there at all.

"*Q.* I will get you to state if you used that one hundred feet same as the rest of the land? *A.* I used it just the same.

"*Q.* Was the whole tract inclosed? *A.* It never was fenced just south of the eighty acres. It was closed on the north.

"*Q.* How many years did you occupy it, Mr. Welsh? *A.* I believe, nearly ten years, nine and more; until '79.

"*Q.* Well, up to '79—up to that time, I will get you to state how you used the one-hundred-feet strip as to the whole tract of land? *A.* I used it like I wanted as well as I could. Some places it did not pay to use.

"*Q.* You understand that the roadbed runs through this land? *A.* Yes, sir."

## CROSS-EXAMINATION.

"*Q.* Mr. Welsh, what work did you do on that roadbed at any time? *A.* Well, I put out trees and dug trees.

"*Q.* Where at? *A.* Different places.

"*Q.* Name one place? *A.* One was where there was a pond.

"*Q.* What year did you first go on that ground? *A.* 1870.

"*Q.* What month? *A.* I think it was about the first of April.

"*Q.* You were cultivating trees while they were grading that road? *A.* Yes, sir.

" *Q.* When were they grading that roadbed ? *A.* They were working there some in May.

" *Q.* Where did you raise these plants ? *A.* Right on the east side of the track.

" *Q.* How long did it take you to dig and put out these hedge plants ? *A.* About thirty days.

" *Q.* What did you do next ? *A.* Then in the spring we did some more.

" *Q.* How long were you at work that time ? *A.* Probably twenty days.

" *Q.* When did you do any more ? *A.* Not until fall again.

" *Q.* What time in the year did you commence ? *A.* In the fall.

" *Q.* What last did you do ? *A.* That was all we did after going to work, until probably six months again.

" *Q.* What else did you do to that one hundred feet ? *A.* I cleaned it off and plowed it.

" *Q.* How did you plow it ? *A.* I had a man plow it.

" *Q.* How did you plow it ? *A.* I recollect he called it clear ground.

" *Q.* It was plowed east and west ? *A.* Yes, sir.

" *Q.* How wide a strip ? *A.* I think maybe thirty or forty feet wide.

" *Q.* Who did you tell you claimed title to that one hundred feet ? *A.* I told everybody.

" *Q.* Name one man. *A.* I told Mr. Morgan.

" *Q.* Where is he ? *A.* At Laclede.

" *Q.* Who else did you tell ? *A.* I told Mr. Mitchell.

" *Q.* Who else did you tell about this claim ? *A.* I told two parties there.

" *Q.* Who else ? *A.* I saw Mr. Reynolds about it.

" *Q.* Did you fence that roadbed up ? *A.* Yes, sir.

" *Q.* Just the same as before ? *A.* Yes, sir."

Mr. Mitchell testified in chief: " *Q.* I will get you to state after the work was done in 1870, what was done by the land-owners as to the whole of the track being fenced up? This one-hundred-feet strip as well as the rest? *A.* No, sir, it was not all fenced. The outer fences were put up, but generally there were no cross fences between the farms.

" *Q.* When was it fenced? *A.* All that whole country was open between the farm's fences made along the roads. I saw there was no cross fences.

" *Q.* I will get you to state if, after your wife bought the farm, you cultivated it? State with regard to the one hundred feet. *A.* I did not have any regard for the one hundred feet.

" *Q.* Was the roadbed fit for cultivation? *A.* No, sir.

" *Q.* You cultivated up how close to it? *A.* As close as I could.

" *Q.* I will get you to state whether there was any reservation as to this strip of one hundred feet? *A.* No, sir.

" *Q.* When you sold to Dr. Brown, I will get you to state if there was any reservation? *A.* No, sir.

" *Q.* Do you recollect how long you occupied it before Dr. Brown purchased it? *A.* I do not, for several years.

" *Q.* Who occupied it before? *A.* Mr. Welsh."

CROSS-EXAMINATION.

" *Q.* What did you ever do in connection with that one hundred feet? *A.* Nothing.

" *Q.* You recollect there was a roadbed through the right of way? *A.* Yes, sir.

" *Q.* You did not claim title? *A.* No, sir.

" *Q.* Did anybody else? *A.* Not that I know of.

" *Q.* The company was claiming the whole tract as a railroad? *A.* I suppose it was."

There was other evidence tending to show that when defendant's employes commenced repairing the grade on the right of way in September, 1881, the same had been in cultivation close up to the roadbed as graded.

The grounds for reversal urged in this court are, that the trial court erred in giving plaintiff's instructions numbered 1, 2 and 3, and in refusing defendant's instruction numbered 10, and in overruling defendant's motion for a new trial.

I.   The first instruction given for the plaintiff was calculated to obscure the issue and mislead the jury. The premises described in the petition was the eighty-acre tract.   There was no question raised upon the evidence as to plaintiff's ownership of any part of that tract except the one-hundred-feet right of way across it, and the instruction should have been confined to the real issue in the case, which was as to the ownership of that strip, and not of the whole tract, and this was a legal question not to be submitted to the jury, but the facts to be by them found from which the ownership could or could not be declared.

II.   The second instruction is also misleading and not warranted by the evidence.   The uncontradicted evidence was, that after the strip of one hundred feet had been condemned for a right of way the employes of defendant's grantor in the summer of 1870 entered upon the right of way and were engaged in grading the road-bed, and for that purpose had possession of the right of way; that Welsh was also in possession of some parts of that right of way that was not being graded for the roadbed, using it for agricultural purposes.   The rail-road company was in possession of the strip as of right under the condemnation proceedings, and their right of possession extended to the whole strip.   The company's right to the possession of the right of way under the condemnation proceedings is conceded, so that Welsh's

possession of a part of the right of way was either as a trespasser or by permission of the railroad company. He did not, and could not, have had exclusive, adverse possession of the strip until after the defendant's grantors ceased to occupy the right of way for the purposes for which it was condemned. There was no question of a "surrender of possession" or of a continuance of a possession which Welsh is assumed to have had of the strip prior to and pending the condemnation proceedings.

The question presented in the case was, after the railroad company ceased to occupy this strip of land, did Welsh take exclusive adverse possession of it, claiming it as his own, and did he and his grantees so hold it continuously for a period of ten years thereafter and before the defendant entered upon this strip in September, 1881? This question upon which the whole case turned was not presented to the jury in any of plaintiff's instructions in such clear and unmistakable language as to enable them to pass upon it advisedly. Why the third instruction for the plaintiff was given, it is impossible to conjecture; there was nothing in the pleadings or the evidence to warrant it, and no question raised as to plaintiff's action being barred by the statute of limitations.

III. The instructions asked by the defendant presented properly to the jury the issue on the evidence, and, if the tenth asked had been given in connection with those that were given for the defendant, a verdict might have been expected in accordance with the evidence.

The only adverse possession under claim of right which the evidence tended to show was that of Welsh extending from the time that the Central Missouri Railway Company ceased occupying the right of way in the summer of 1870, until some time in the year 1879, when Mitchell went into possession, and it was

impossible to make out a ten years' adverse possession in plaintiff's grantors without counting a part of the time of Mitchell's possession, and there was no evidence tending to show that Mitchell's possession of the strip was adverse to the railway company or its grantees ; on the contrary, he testified that he did not claim title to the right of way. If the defendant's refused instruction had been given, the jury would have seen at once that Mitchell did not hold possession adversely and that no part of his time in possession was to be counted, and that plaintiff had failed to make out a case, in failing to show that he and his grantors had held continuous, adverse possession of the right of way for ten years prior to first of September, 1881.

The verdict can only be accounted for by the misleading instruction given for the plaintiff, and the refusal of the court to give the defendant's tenth instruction, which might have corrected the confusion they were calculated to produce, and enabled the jury to properly understand the issue they were called to pass upon.

For the errors of the trial court in its action on the instructions, and for error in refusing a new trial when there was no substantial evidence that the plaintiff and his grantor had been in actual, continuous, adverse possession of the right of way for a period of ten years or more before the defendant's entry in 1881, the judgment will be reversed. All concur, except that RAY, C. J., and BARCLAY, J., are of the opinion that the case should be remanded.