## W. H. CAFFERY, Respondent, v. CHOCTAW COAL & MINING COMPANY et al., Appellants.

### Kansas City Court of Appeals, June 2, 1902.

1. **Pleading:** INSTRUCTION: RECOVERY: CONTRACT: AGENCY.
A petition averred that plaintiff was the agent and general manager
of a certain corporation and made a contract for the corporation about
which a certain suit had theretofore been pending and a judgment
had been obtained against plaintiff herein.   In this action he sought
to recover from the corporation for such judgment and an instruction
submitted the question whether the corporation had agreed and
promised plaintiff to defend said action and protect the plaintiff.
*Held,* the instruction permitted a recovery without regard to the alle-
gations of the petition and substituted other issues in lieu of those
presented by the petition and was error.

2. **Judgment:** JURISDICTION: COLLATERAL ATTACK.   Where it
appears from the whole record that a court had no jurisdiction over
the person or subject-matter, the judgment is void and may be at-
tacked collaterally.

3. ———: ———: ———: CONTRADICTING RECORD: FEDERAL
COURT.   Even though the record show jurisdiction of the subject-
matter, person or res, it may be contradicted on such question; but
this rule does not permit a collateral attack on the judgment of a
Federal court.

4. ———: ———: JUSTICES' COURTS: EQUITABLE DEFENSE.
The judgment of a Federal court, involved in an action commenced
in a justice's court, can not be impeached in such court nor any court
to which the cause is appealed.

5. **Execution:** VENDITIONI EXPONAS: JUSTICES' COURTS:
PASSING TITLE.   In an action begun in a justice's court, an investi-
gation may be had whether a sale of certain shares of stock under a
venditioni exponas passed the title thereto.

6. ———: LEVY: FOREIGN CORPORATION: STATUTORY CON-
STRUCTION.   Under an execution issued from a Federal court of the

Indian Territory, against one C, the marshal found the secretary of a New Jersey corporation who gave him a certificate that C was the owner of certain shares of stock in such corporation, and the marshal gave the secretary a true copy of his execution and levied on the shares in accordance with the statute of the Territory. *Held,* the statute was in derogation of common law, had no extraterritorial force, and the levy was void, since the situs of the shares was the home of the corporation, and there could be no manucaption thereof.

7. **Corporations:** SHARES OF STOCK: CERTIFICATES: LEVY: SITUS. Stock in a corporation is an incorporeal thing which can not be seized by an officer, and is a mere chose in action and can not be attached by a levy on the certificates. It is personal property, the situs of which is in the State creating the corporation.

8. **Execution:** VENDITIONI EXPONAS: RETURN. PERSONAL PROPERTY. A venditioni exponas is a writ commanding the officer to sell goods in his hands by a former writ and where the levy under the former writ is void or such writ is functus officio when the venditioni exponas is sued out, the proceedings thereunder are void since the venditioni confers no authority not previously possessed.

9. ———: LEVY: POSSESSION. The levy takes the property out of the owner's possession into the possession of the officer, which possession the officer must maintain and control.

## Appeal from Jackson Circuit Court.—*Hon. James Gibson,* Judge.

REVERSED AND REMANDED.

*Trimble & Braley* and *Dudley W. Eaton* for appellant.

(1) The court submitted the case to the jury upon a different contract than that pleaded in the amended petition. Woods v. Campbell, 110 Mo. 572; Brown v. Railroad, 101 Mo. 484; Railroad v. Railroad, 118 Mo. 625; Smith v. Railroad, 108 Mo. 243, and cases cited; Edwards v. Railroad, 79 Mo. App. 257; Chitty v. Railroad, 148 Mo. 64; James v. Hicks, 76 Mo. App. 108; Manufacturing Co. v. Ball, 43 Mo. App. 512, and cases cited; Ragan v. Railroad, 144 Mo. 623, 46 S. W. 602;

Colliott v. Mfg. Co., 71 Mo. App. 170, and cases cited. (2) The levy·of the execution upon the stock in the Indian Territory was regular and properly made. (3) The execution and the levy thereof retained a lien upon the stock after the return of such execution. Barber v. Pear, 31 Ark. 392; Hare v. Hall, 41 Ark. 372; Whiting v. Beebee, 12 Ark. 421; Lawson v. Jordon, 19 Ark. 297. (4) The plaintiff could not in this action assail the judgment of the United States court for the Indian Territory, such an attack upon that judgment would be collateral merely and not permissible. Field v. Sanderson, 34 Mo. 542; Black on Judgments, sec. 290 and 291, are to the same effect; Chrisman v. Divinia, 141 Mo. 122; Union Depot Co. v. Frederick, 117 Mo. 138; Lingo v. Burford, 112 Mo. 149; Gray v. Bowles, 74 Mo. 419; 1 Black on Judgments, sec. 261; Myers v. McRay, 114 Mo. 377; Adams v. Cowles, 95 Mo. 503; Duffy v. Joyall, 5 Mo. App. 579; State ex rel. v. Donegan, 12 Mo. App. 190; Knoll v. Woelken, 13 Mo. App. 275; Myers v. Miller, 55 Mo. App. 338; State v. Wear, 145 Mo. 162; Reed Bros. v. Nicholson, 158 Mo. 624. (5) The judgment was not subject to collateral attack. Castleman v. Relfe, 50 Mo. 583; Shelbina Hotel Assn. v. Parker, 58 Mo. 327; Perryman v. State, 8 Mo. 208; Bernecker v. Miller, 44 Mo. 102; McDonald v. Frost, 99 Mo. 44; State ex rel. v. Donegan, 83 Mo. 374; Yates v. Johnson, 87 Mo. 213; Burke v. Kansas City, 118 Mo. 309; Howard v. State, 47 Ark. 431; Leonard v. Sparks, 117 Mo. 103; Akers v. Hobbs, 105 Mo. 127; Grover v. Grover, 30 Mo. 400; 1 Black on Judgments, secs. 83 and 87; Leonard v. Sparks, supra; Thompson v. Railroad, 110 Mo. 151; Howland v. Railroad, 134 Mo. 479; Black on Judgments, 261, 263 and 245; Fears v. Riley, 148 Mo. 49; Lovett v. Russell, supra; Seymour v. Newman, 77 Mo. App. 578; Wonderly v. Lafayette Co., 150 Mo. 635; McKenzie v. Donnell, 151 Mo. 450; Cox v. Boyce, 152 Mo. 576; Shea v.

Shea, 154 Mo. 599; State v. Brandhorst, 156 Mo. 457; State v. McKee, 150 Mo. 233.

*Chase & Noble* for respondent.

Filed argument reviewing appellants' authorities.

SMITH, P. J.—On December 14, 1899, the plaintiff entered into a written contract with one S. F. Scott, trustee, whereby the former sold and assigned to the latter 144 shares of stock in the defendant, the Choctaw Coal and Mining Company, which company we shall hereafter designate as the "coal company," for $2,-500, of which amount $1,000 was then paid, and the remaining amount of $1,500 was to be paid on or before January 1, 1900. There was a provision in the contract to the effect that "94 shares of said stock had been levied on under an execution in favor of Herman Gedosch against W. H. Caffery; and if said process fixes a lien upon said stock, then the amount of such lien shall be deducted from said $1,500."

Afterwards on December 28, 1899, the said Scott, trustee, paid the plaintiff the $1,500 referred to in the contract of December 14, 1899, less $250 paid to Frank Hagerman to be held and disposed of by him in accordance with a provision in that contract. This action was brought to recover the said sum of two hundred and fifty dollars placed in Mr. Hagerman's hands. The plaintiff had judgment in the circuit court and the defendants appealed.

I. The defendants contend that the judgment ought to be reversed because the instruction given for the plaintiff authorized a verdict by the jury on a cause of action not alleged in the petition. This instruction told the jury that if they believed from the evidence that the debt or subject of the action, sued on by Herman Gedosch in the Indian Territory, was contracted

by the plaintiff, and the Choctaw Coal & Mining Company agreed to assume and did assume such debt, and that the said Choctaw Coal & Mining Company received the benefit and profits of such contract and that while said action of the said Herman Gedosch was pending and undetermined in the court of said Indian Territory, the officers of the said Choctaw Coal and Mining Company agreed with the plaintiff that they would appear for him and protect his interests and make the proper defense in the said suit between Herman Gedosch, Choctaw Coal and Mining Company and plaintiff, and the plaintiff believed and relied upon such promise and agreement, and that the officers, instead of making such defense and protecting the interests of said plaintiff in said cause, then pending in the Indian Territory, entered into an agreement with Tom W. Neal, attorney for the said Herman Gedosch in the said cause then pending in the Indian Territory, by which judgment was taken against the said plaintiff by default, and further entered into an agreement with the said Tom W. Neal, by which said officers of the said Choctaw Coal and Mining Company were to assist and did assist the said Tom W. Neal in having execution issued upon the judgment thus obtained against the said plaintiff on the action of said Herman Gedosch, and levied upon 94 shares of capital stock of the said Choctaw Coal and Mining Company owned by plaintiff, and further assisted the said Tom W. Neal in the sale of such stock under and by virtue of such execution, and that the said Tom W. Neal, at such execution sale, purchased the said 94 shares of stock owned by this plaintiff, aforesaid, and that the officers of the said Choctaw Coal and Mining Company, in order to carry out the agreement made and entered into with the said Tom W. Neal, in and about the premises, purchased of said Tom W. Neal the said 94 shares of stock, then such sale and purchase of said stock by the officers of the said Choctaw Coal and Mining Company amounts in law to a

fraud upon the said plaintiff, and your verdict should be for the plaintiff in such sum as you may believe from the evidence he is entitled to, not to exceed the sum of two hundred and fifty dollars.

The petition alleged that prior to the commencement of the cause wherein Herman Gedosch was plaintiff and W. H. Caffery and the Choctaw Coal and Mining Company were defendants, he, "the plaintiff, was agent and general manager of the Choctaw Coal and Mining Company, and as such entered into a contract with the said Herman Gedosch for such company, whereby plaintiff, for the Choctaw Coal and Mining Company purchased a lease for certain coal lands in the Indian Territory and entered into a contract of employment with the said Herman Gedosch for the said Choctaw Coal and Mining Company, and that said company had full knowledge of said contract and fully ratified and confirmed the same and received the proceeds and benefits therefrom, and was wholly liable to the said Herman Gedosch for all of the conditions and considerations of such contract. This plaintiff alleges the fact to be that he, the plaintiff, was in no way personally responsible or liable under the contract made with the said Herman Gedosch having acted simply as agent for defendant and within the scope of his authority as such, and that said defendant, the Choctaw Coal and Mining Company, well knew such facts."

It is thus seen that there is a substantial and radical departure in the theory of the instruction from that of the petition. Under the contract as pleaded, the plaintiff, Caffery, was in no way liable thereon to Gedosch, while under that embraced in the hypotheses of the instruction he was, if there was no release by Gedosch, which there seems not to have been. If the contract between Gedosch and plaintiff was for the coal company, as alleged in the petition, then it was not that of Gedosch with plaintiff, and there could have been no assumption by the coal company of an obligation

which was primarily and originally its own. According to the theory of the instruction, the coal company, by the assumption of the obligation of plaintiff to Gedosch, became the principal and the plaintiff the surety therein and a submission of the case on that theory, perhaps would have been well enough, had it been justified by the allegation of fact contained in the petition. It is clear the instruction was framed without regard to the allegation of the petition hereinbefore quoted, and as the theory thereof is so materially variant from the former it must, in view of the precedents in this State, be disapproved. Chitty v. Railway, 148 Mo. 64; Woods v. Campbell, 110 Mo. 572; Brown v. Railway, 101 Mo. 484; Railway v. Railway, 118 Mo. 625; Smith v. Railway, 108 Mo. 243. A court can not by an instruction change the issues made by the pleadings. A plaintiff can only recover on the case he states in his petition. Wright v. Fonda, 44 Mo. App. 634, and cases there cited; Jacquin v. Cable Co., 57 Mo. App. 320.

As the cause will probably be again tried it may not be amiss to state that the well-recognized rule in this State is, that when it appears from the whole record of a court that it had no jurisdiction over the person or subject-matter, the judgment is void and will be so treated in a collateral proceeding. Wyeth v. Lang, 54 Mo. App. 147, and cases there cited.

II. In an action in this State on a judgment, given in another State by a court of general jurisdiction, regular in its form, showing jurisdiction of the person and the subject-matter, the defendant may set up in his answer as a defense, the fact that in the original suit no service was had on him and that the appearance entered on his behalf was fraudulent notwithstanding that such a defense contradicts the recitals in the record. Such a defense is proper under the statute authorizing equitable defenses. Want of jurisdiction may be shown either as to the subject-matter or the

person, or, in the proceedings *in rem,* as to the thing, although the record may recite facts necessary to give the court jurisdiction.  Upon the jurisdictual question the record may be contradicted.  Marx v. Fore, 51 Mo. 69; Fager v. Stover, 59 Mo. 87; Barlow v. Steel, 65 Mo. 611; Napton v. Leaton, 71 Mo. 358; Bradley v. Welch, 100 Mo. 268.

And a judgment in a Federal court is in like manner subject to attack in a State court, but not to a collateral attack.  Wonderly v. Lafayette Co., 150 Mo. 635.

As far as we are able to discover, the record of the judgment of the United States District Court for the Indian Territory, introduced in evidence, showed jurisdiction of the person of the defendant and of the subject-matter, and so was not open to collateral attack in this action.  And as this action was begun before a justice of the peace, the jurisdiction of the court to which it was removed is to be measured by that of the justice.  The jurisdiction of the latter, in such cases, is derivative and as the former has no equitable jurisdiction (Hicks v. Martin, 25 Mo. App. 359; McCann v. Sawyer, 69 Mo. App. 480); neither has the latter. Seeser v. Southwick, 66 Mo. App. 667; McCann v. Sawyer, ante.  It is thus seen that the judgment of the Federal court can not be impeached in this case, no difference what the proceedings may be.

But whether or not the sale of the plaintiff's stock by the United States marshal under the writ of *venditioni exponas* was effectual to pass the title to his vendee, is a question which may be investigated in this action.  If no title passed by that sale, it is clear that the plaintiff, according to the terms of his contract with Scott, trustee, ought to recover the two hundred and fifty dollars in the hands of Mr. Hagerman.  It appears from the record of the judgment and proceedings of the Federal court, in the case of Gedosch v. Caffery, that the execution was issued which it is claimed was levied on 94 shares of the defendant Caffery's stock in

the coal company.   The defendants at the trial of this case introduced in evidence two sections of the act of Congress applicable alone to the Indian Territory, which are as follows:

"Section 2118 (M. D. 3003).   When an execution shall be issued against any shares of stock in any bank, insurance company, or other corporation, it shall be the duty of the cashier, secretary or chief clerk thereof, upon the request of the officer having such execution, to furnish him with a certificate, under his hand, stating the number of rights or shares the defendant holds in such bank, company or incorporation, with the incumbrances thereon.

"Section 2119 (M. D. 3004).   The officer obtaining such information may make a levy of such execution on such rights or shares by leaving a true copy of such writ with the cashier, secretary or chief clerk, and, if there be none, then with some other officer of such bank, company or corporation, with the certificate of the officer making such levy, that he levies upon and takes such rights or shares to satisfy such execution."

The coal company is a foreign corporation, incorporated under the laws of the State of New Jersey, having an office in this State where its officers reside and transact its general business. It, however, operates certain coal mines which are situated in the Indian Territory.   It appears that the secretary of the coal company, the defendant Baer, while in the Indian Territory upon the request of the said marshal, furnished him the certificate specified in the first of the sections of said act and after the receipt of which he levied on said 94 shares of stock by delivering to said secretary a true copy of said execution.   Did this constitute a valid levy?   We are inclined to think not.

The sections of the act just quoted, upon their face, relate solely to domestic corporations.   Any other construction, it seems to us, would be most unreasonable.   It certainly can not be that if A has a judgment

against B in one State, and that B is a stockholder in a corporation organized under the laws of another State, and that if the secretary of such corporation happening to be in the State of the judgment should choose to furnish the officer having an execution issued on the judgment, a certificate under his hand, showing the number of shares B has in said corporation, that the officer would thereby be enabled to make a valid levy on the shares of stock he was thus informed were owned by B in such corporation. Such statutory provisions are in derogation of the common law and should be strictly construed.

The two sections of the Indian Territory act are the counterparts of our sections 4924, 4925, Revised Statutes 1889. In Bank v. Bank, 113 Mo. 12, it was held, that these provisions apply to domestic corporations alone. It was there said that beyond question the provision requiring the secretary of the corporation to furnish the sheriff with a certificate, stating the number of shares held by the defendant in the execution, applies to domestic corporations alone, for it can in the nature of things, have no vigor or force beyond the territorial limits of Missouri. And this is the construction given a statute couched in somewhat similar language by the Court of Appeals of New York in Plimpton v. Bigelow, 93 N. Y. 593, where it is said, that such a statute "has an appropriate application to shares of domestic corporations, such corporations are completely subject to the jurisdiction of our courts and may be compelled to recognize a title to corporate shares derived under proceedings by attachment. In respect to foreign corporations such power does not exist and it could scarcely be expected that the courts of another State would recognize a title to corporate stock of its own corporations, founded upon a sale under an attachment issued by courts against a nonresident, when the only semblance of jurisdiction over the property *was the service of notice* of the attach-

ment proceedings, upon an officer or agent of the corporation here. . . . The abstract entity—the corporation—is the owner and only owner of the property. . . . We do not doubt that shares for the purpose of attachment proceedings may be deemed to be in the possession of the corporation which issued them, but only at the place where the corporation by intendment of law always remains, to-wit; in the State or country of its creation. *In all other places it is an alien.* It may send its agents abroad as any other inhabitant may do, without passing personally into the foreign jurisdiction or changing its legal residence. It was accordingly held that the statute applied to domestic corporations only.

A share of stock is an incorporeal, intangible thing. The property interest of the shareholder is an intagible and invisible thing and can not be actually seized by an officer. Such property is neither a specific chattel nor a debt, but a mere chose in action. Foster v. Potter, 37 Mo. 526; Neiler v. Kelly, 69 Pa. St. 403; Fisher v. Essex, 3 Gray 373. Certificates of stock are not the stock itself, but the evidence of it. The stock itself can not be attached by a levy of attachment on the certificate. Bank v. Bank, ante. Stock can not be attached by attaching the certificates any more than lands situate in another State can be attached by an attachment in this State on the title deeds to such lands. Shares of stock in a corporation are personal property whose location is in that State where the corporation is created. Cook on Corp., sec. 485. In Freeman on Executions, section 172, it is stated, that "the *situs* of stock for the purpose of attachment or execution is at the domicile of the corporation. Therefore, unless, perhaps, in case where the corporation has been in effect so admitted into or adopted in a State other than that of its creation, that it may be deemed to have become a resident of both States, *a levy of an execution upon shares or interests of the defendant in a corpora-*

*tion can be made only in the State wherein the corporation was organized and of which it remains a resident."* Winston v. Fletcher, 53 Conn. 390; Plimpton v. Bigelow, 93 N. Y. 592; Inland v. Globe Mill Co., 19 R. I. 180; Penney v. Mulls, 86 Fed. Rep. 97; Young v. South Tredegar Iron Co., 85 Tenn. 189.

In Thompson on Corporations, section 2786, it is said: "That so far. as the writer knows, all of the States which prescribe the manner of levying upon shares of corporate stock by execution or attachment, prescribe that it shall be done by giving notice to the corporation or to its secretary or to the officer in charge of its books. This notice to the officer in charge of the corporate books being essential to the validity of the seizure. The effect of such statutory provision necessarily is to make the *situs* of corporate shares for the purpose of the levy of an execution or attachment the *situs* of the corporation itself. *It follows that shares owned by a non-resident defendant in the stock of a foreign corporation can not be reached and levied upon by virtue of an execution, although the officers of the corporation are in the State of the forum, engaged in carrying on the corporate business there."*

When there is a statute providing for the registration of foreign corporations—as in this State, (secs. 1024, 1025, 1026, R. S.)—doing business in the State, and also providing "that such corporations shall be. deemed and taken to be corporations of this State and shall be subject to the jurisdiction of the limits of this State, and may be sued and sue therein in the mode and manner that is or may be by law directed in the case of corporations created and organized under the laws of this State" it has been held that the *situs* of a foreign corporation and the *situs* of its shares and stock for the purpose of such levy are transferred to its principal office within the domestic jurisdiction. Young v. South Tredegar Iron Co., ante.

Accordingly, we are led to the conclusion that the

statute given in evidence was inapplicable and that the supposed levy of the marshal was not an authorized or valid, actual or constructive seizure of either the stock or the certificates of stock and for that reason ineffectual.

At common law the writ of *venditioni exponas* was a judicial writ directed to the sheriff, commanding him to sell goods in his hands by a former writ (but to which writ he had returned that he had taken goods, but that they remained in his hands for want of buyers) in order to satisfy the judgment against the defendant. 28 Amr. and Eng. Ency. Law, 66. The execution here was returned on January 4, 1900, and was then *functus officio*. The writ of *venditioni exponas* was not issued until more than three months afterwards. Assuming the levy in the first instance was valid (as it was not), did its life continue after the return of the execution until the issue of the *venditioni exponas,* so that a sale under the latter writ would pass title without statutory aid? The general rule is, that the lien of an execution terminates on the return of that writ, unless a levy has been made, then it continues until a sale can be made. Amr. and Eng. Ency. Law, p. 678-b; Perkins v. Woolaston, 1 Salk. 321.

The lien of an execution, except as to property levied upon and retained in custody, ceases on the return day of the writ. Freeman on Executions, sec. 202. The writ of *venditioni exponas* confers no authority not previously possessed by the officer to whom it is directed. In the case of personal property, the officer levying the execution obtains the right of possession and a special property right in the property seized, which continue after the return day and authorize him to sell as effectually as if the original writ remained in force. Freeman on Executions, sec. 59.

In order to constitute a levy there must be a taking of the property into the possession of the officer and a divesting of the possession of the owner. The officer

must maintain his possession and control to such an extent that the property could not probably be taken from his custody without his knowing it.   Freeman on Executions, sec. 260; Douglas v. Orr, 58 Mo. 573.   It thus appears that the function of the writ *venditioni exponas* is to command that the officer sell the goods he previously levied upon, by a former writ and remaining in his custody for want of a buyer.   There was no levy, or, which is the same thing, manucaption or custody taken of the shares of stock described in the return of the marshal on the execution.   It was legally and physically impossible, according to the principles of law to which we have referred, for him to do so. Unless there was an actual levy in substantial compliance to the requirements of the statutory provisions given in evidence, the sale was void.   How v. Starweather, 17 Mass. 240; Princeton v. Crozier, 22 N. J. L. 383; Blair v. Compton, 33 Mich. 414.   The *situs* of the coal company corporation, issuing the stock upon which the officer attempted to levy, was in the State of New Jersey, and that of the certificates of the shares was in the same State.   No statute in force in the Indian Territory was pleaded or introduced in evidence, relating to the registration of foreign corporations, under whose provisions they could become subject to the jurisdiction of that Territory, or by which the *situs* of the stock of said coal company, for the purpose of the levy, could be transferred within the jurisdiction of that Territory, nor can we presume the existence of any such statute there.   Silver v. Railway, 21 Mo. App. 5.   As both Caffery and the coal company were nonresidents of the Territory and as the certificates of stock were not there, it is manifest that there was not and could not be a valid levy of the execution on such stock, and as there was no valid levy—no execution lien—the issue of the writ of *venditioni exponas* and the attempted sale thereunder were futile and inefficacious.   The sale did not have the effect to pass any

interest, either legal or equitable, which Caffery had in the said 94 shares of stock, to the purchaser at such sale. The effort so made to sell the stock was wholly abortive and must be regarded in law as if it had never taken place.

It inevitably follows from the foregoing observations, that the several instructions requested by defendants, which in effect declared that the proceedings by the marshal under said writs in making the levy and sale of said stock, was conclusive and binding upon the plaintiff herein, were properly refused.

There are some other questions discussed in the briefs of counsel, but as these do not properly arise on the record, or else in the view we take of the case are not vital, we need not notice them here.

The judgment will be reversed and the cause remanded. All concur.